**Oscar Brown BOYKINS, Jr.,**
**Petitioner-Appellant,**

v.

**Louie L. WAINWRIGHT,**
**Respondent-Appellee.**

**No. 82–3086.**

United States Court of Appeals,
Eleventh Circuit.

Aug. 3, 1984.

Rehearing and Rehearing En Banc
Denied Sept. 7, 1984.

Lynne, District Judge, sitting by designation, filed opinion concurring in part and dissenting in part.

Archibald J. Thomas, III, Asst. Federal Public Defender, Jacksonville, Fla., for petitioner-appellant.

Lawrence A. Kaden, Asst. Atty. Gen., Tallahassee, Fla., for respondent-appellee.

Before KRAVITCH and JOHNSON, Circuit Judges, and LYNNE*, District Judge.

JOHNSON, Circuit Judge:

The petitioner, Oscar Brown Boykins, was convicted of robbery in violation of Fla. Code Ann. § 812.13 and sentenced to life imprisonment. Boykins appeals from the denial of his petition for a writ of habeas corpus. We find the petitioner's claim that he was denied effective assistance of counsel at his trial is without merit. Nevertheless, we reverse the district court's denial of the writ because the trial court's limitation of the scope of a key defense witness's testimony denied the petitioner the right to present witnesses in his own defense in violation of the due process clause of the Fourteenth Amendment.

On the morning of August 8, 1973, Boykins walked into an antique shop in Jacksonville, Florida. After feigning interest in some merchandise, he pulled a gun on the proprietor, robbed her of ten dollars, and beat her. Police who happened to be near the scene immediately arrested Boykins. He was charged with robbery and aggravated assault.

Boykins's case was assigned to Stephen Donahoe of the Public Defender's Office. Mr. Donahoe obtained authorization to have a court-appointed psychiatrist, Dr. Ernest Miller, examine Boykins. Dr. Miller concluded that Boykins was competent to stand trial but that he had been insane at the time of the offense. The State then obtained permission to have Boykins examined by two psychiatrists of its own. In

* Honorable Seybourn H. Lynne, U.S. District Judge for the Northern District of Alabama, sitting by designation.

late November 1973, Mr. Donahoe transferred from his position in the Public Defender's Office, and Assistant Public Defender Ronald Cosgrove assumed the defense of Boykins's case. Cosgrove first visited Boykins on December 2, two weeks before the scheduled opening of the trial. On December 13, four days before trial, the prosecution filed the reports of its doctors with the court. Both of the state's psychiatrists concluded that Boykins was competent to stand trial and sane at the time of the offense. Cosgrove sought neither to depose these potential witnesses nor to obtain a continuance.

At the trial, Cosgrove raised only the defense of insanity. His first witness, Dr. Jesus Rodriguez, had treated Boykins for mental illnesses for three years at the Florida State Hospital at Chattahoochee. Dr. Rodriguez had last examined Boykins less than eight months before the robbery. Cosgrove sought to elicit from Dr. Rodriguez testimony relating to Boykins's history of mental illness, a diagnosis of his condition (paranoid schizophrenia), and information relating to the chance that Boykins's symptoms might have reoccurred after his release from Chattahoochee. The trial court sustained an objection to introduction of this testimony on the ground that it was not relevant to Boykins's mental condition at the time of the offense. The court stated that, because the officials at Chattahoochee had judged Boykins "competent" in January 1973, any evidence of mental illness prior to that time could not be relevant to evaluation of Boykins's subsequent mental condition. The court limited Dr. Rodriguez to answering a hypothetical question whether, given the defendant's conduct on August 8, 1973, the doctor felt Boykins was sane at that time. Cosgrove's only other witness was Dr. Miller. The prosecution then called its two psychiatrists as well as one lay witness who was present at Boykins's arrest, all of whom testified that he was sane at the time of the robbery. The jury convicted Boykins of robbery, and the court sentenced him to life imprisonment.

Boykins filed a timely notice of appeal, and on January 9, 1975, the state appellate court affirmed his conviction. *Boykin [sic] v. State*, 305 So.2d 831 (Fla.Dist.Ct.App. 1975). On August 14, 1978, Boykins filed a motion for post-conviction relief, which was summarily denied on October 29, 1978. That denial was affirmed on appeal. *Boykin v. State*, 375 So.2d 52 (Fla.Dist.Ct.App. 1979).

His state remedies having brought no relief, Boykins filed a petition for writ of habeas corpus in the United States District Court for the Middle District of Florida on November 21, 1979. The United States Magistrate held an evidentiary hearing and filed a report recommending that the court deny the petition. On August 16, 1982, the district court adopted the magistrate's report and recommendations and denied the writ. Boykins appeals.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

Boykins first claims that the assistance that Cosgrove rendered during his trial was ineffective. He points out that Cosgrove was assigned the case just two weeks before trial and had time to interview Boykins only once prior to the trial date. Nevertheless, Cosgrove never requested an extension of time, not even after receiving the damaging reports of the government's experts just four days before the trial. Furthermore, Cosgrove's work load was very heavy, amounting to 250 to 300 felony defendants per year. Despite this huge caseload, Cosgrove was inexperienced to the extent that he had apparently never participated in a trial in which the defense was insanity.

Boykins alleges that Cosgrove committed a number of specific errors that severely prejudiced his defense. The first is Cosgrove's failure to interview the state's psychiatrists, the critical witnesses against Boykins, before the trial. Because Boykins's defense depended in large part on Cosgrove's handling of these witnesses, Boykins claims that neglecting even to interview them rendered Cosgrove's conduct of the defense ineffective. Nor did Cosgrove interview any relatives or friends of

Boykins to collect lay evidence of his mental state around the time of the robbery. Boykins testified that Mr. Donahoe, his original counsel, had planned to pursue such testimony. Finally, Boykins argues that Cosgrove should have demanded a pretrial competency hearing and have raised the fact that Boykins was being sedated at trial as treatment for mental illness.

■ The Sixth Amendment guarantees to criminal defendants the assistance of counsel. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

> That a person who happens to be a lawyer is present at trial alongside the accused, however, is not enough to satisfy the constitutional command. The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results. An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair.
>
> For that reason, the [Supreme] Court has recognized that "the right to counsel is the right to the effective assistance of counsel."

*Strickland v. Washington,* — U.S. —, —, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984). The Supreme Court has recently explicated the principles that should guide courts facing claims of ineffective assistance of counsel. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 2064. A convicted defendant who seeks to challenge his conviction on the grounds that his counsel failed to render constitutionally sufficient assistance must make two showings.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that

the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 2064.

Because we find that Boykins has failed to make the required showing of prejudice, we will proceed directly to that issue. *See id.* at 2069–2070. In *Strickland,* the Supreme Court reaffirmed the principle that "any deficiencies in counsel's performance must be prejudicial in order to constitute ineffective assistance under the Constitution." *Id.* at 2067. Prior to *Strickland,* the standard for what constituted sufficient prejudice varied among the Courts of Appeals. This Court required defendants to demonstrate that counsel's ineffectiveness worked to the accused's "actual and substantial disadvantage," a standard equivalent to the showing necessary to prove "prejudice" under *Wainwright v. Sikes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). *See Washington v. Strickland,* 693 F.2d 1243 (5th Cir. Unit B 1983) (en banc), *reversed,* — U.S. —, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). On the other hand, the District of Columbia Circuit imposed on the accused "the initial burden of demonstrating a likelihood that counsel's inadequacy affected the outcome of the trial." *United States v. Decoster,* 624 F.2d 196, 208 (D.C.Cir.1979) (en banc). The Supreme Court in *Strickland* announced a formulation that appears to impose upon the accused a burden of showing prejudice that is somewhat heavier than the burden previously imposed by this Court but less onerous than the *Decoster* standard. The Court held that "[i]t is not enough for the defendant to show that errors had some conceivable effect on the outcome of the proceeding." — U.S. at —, 104 S.Ct. at 2067–2068. "On the other hand, we believe that a defendant need not show that counsel's deficient conduct more likely than not

altered the outcome of the case." *Id.* Instead, the Court held, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at ——, 104 S.Ct. at 2068. The Court also emphasized that a substantial burden of proof rests on a defendant who advances such a claim; the challenged proceeding enjoys a "strong presumption of reliability." *Id.* at ——, 104 S.Ct. at 2069.

The *Strickland* standard appears, in theory at least, to require courts to focus more on the effect that counsel's ineffectiveness may have had on the *outcome* of the accused's trial than did this Court's previous prejudice test. Nevertheless, an accused need not demonstrate that counsel's errors are *likely* to have altered the result but only that there is a reasonable probability that the outcome was affected. It is not yet clear what difference, if any, these distinctions will make in practice, *see* —— U.S. at ——, 104 S.Ct. at 2069 (differences among various tests "should alter the merit of an ineffectiveness claim only in the rarest case"), but *Strickland* has, in any event, given us a new focus of analysis.

 We find that Boykins has failed to show that there is a reasonable probability that the alleged inadequacies of his counsel altered the outcome of his trial. In his submissions to this Court, Boykins has made little, if any, attempt to demonstrate how his attorney's alleged errors prejudiced him. Boykins has not demonstrated how Cosgrove's failure to interview the prosecution experts may have altered the outcome of the trial. Moreover, this alleged error is insufficient to undermine our confidence in the result of the state criminal proceeding. The same is true for Cosgrove's failure to produce lay experts who would testify to Boykins's mental and emotional state around the time of the robbery.

As Cosgrove testified before the district court, the insanity issue became essentially a "battle of experts." Although the introduction of lay testimony might have been helpful, in the circumstances of this case it was not required in order to avoid a "breakdown in the adversary process that renders the result unreliable." Moreover, had the trial court permitted Boykins's experts to testify fully, an issue that we discuss below, significant evidence regarding the defendant's history of mental illness would have been presented to the jury. Finally, we cannot conclude that Cosgrove's failure to demand a pretrial competency hearing had any reasonably probable effect on the outcome of the trial. All the available psychiatric reports concluded that Boykins was competent to stand trial. At most Boykins has claimed that his counsel's alleged errors "had some conceivable effect on the outcome" of his trial; such a claim is "not enough." —— U.S. at ——, 104 S.Ct. at 2067–2068.

## II. LIMITATION OF DR. RODRIGUEZ'S TESTIMONY

 The trial court excluded as irrelevant Dr. Rodriguez's testimony relating to Boykins's previous history of mental illness. The petitioner contends that this ruling was incorrect as a matter of evidence law and that it denied him the right to present witnesses in his own defense and therefore violated the requirements of due process. Federal courts reviewing habeas corpus petitions are not empowered to correct erroneous evidence rulings of state trial courts. *Phillips v. Wainwright,* 624 F.2d 585, 589 (5th Cir.1980);[1] *Woods v. Estelle,* 547 F.2d 269, 271 (5th Cir.), *cert. denied,* 434 U.S. 902, 98 S.Ct. 297, 54 L.Ed.2d 188 (1977); *Hills v. Henderson,* 529 F.2d 397, 400–01 (5th Cir.), *cert. denied,* 429 U.S. 850, 97 S.Ct. 139, 50 L.Ed.2d 124 (1976). Moreover, states deserve wide latitude to fashion their own evidentiary rules. *Maness v. Wainwright,* 512 F.2d 88, 92 (5th Cir.1975); *Bassett v. Smith,* 464

---

1. In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit has adopted the case law of the former Fifth Circuit handed down as of September 30, 1981, which is binding unless and until overruled by this Court en banc.

F.2d 347, 351 (5th Cir.1972), *cert. denied*, 410 U.S. 991, 93 S.Ct. 1509, 36 L.Ed.2d 190 (1973). Nevertheless, when a state trial court's evidence rulings deny a habeas petitioner fundamental constitutional protections, this Court's duty requires it to enforce the constitution's guarantees by granting the petition for a writ of habeas corpus.

■ The right to present witnesses in one's own defense in a criminal trial lies at the core of the Fifth and Fourteenth Amendments' guarantee of due process of law. *Faretta v. California*, 422 U.S. 806, 818, 95 S.Ct. 2525, 2532, 45 L.Ed.2d 562 (1975); *Santobello v. New York*, 404 U.S. 257, 264, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971) (Douglas, J. concurring); *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967). As the Chief Justice has written, "[t]he right to the production of all evidence at a criminal trial similarly has constitutional dimensions.... [T]he Fifth Amendment also guarantees that no person shall be deprived of liberty without due process of law. It is the manifest duty of the courts to vindicate those guarantees, and to accomplish that it is essential that all relevant and admissible evidence be produced." This right had perhaps its clearest expression in *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). There the trial court's strict application of Mississippi's hearsay rules had barred the defendant from introducing testimony of several witnesses who had heard another confess to the crime. The Court, stating "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense," *id.* at 302, 93 S.Ct. at 1049, held that the ruling of the trial judge violated due process. After finding the evidence relevant and trustworthy, the Court discounted any state interest in excluding the hearsay. It then held that the ruling deprived the defendant of a fair trial and reversed the conviction. *Id.* at 303, 93 S.Ct. at 1049. *See also Green v. Georgia*, 442 U.S. 95, 97, 99 S.Ct. 2150, 2151, 60 L.Ed.2d 738 (1979) (per curiam) (exclusion of evidence "highly relevant to a critical issue" in the punishment phase of a capital trial when "substantial reasons existed to assume its reliability" violated due process).

■ This Court and its predecessor have demonstrated a proper reluctance to second-guess state court evidentiary rulings on habeas review, rarely granting relief on the basis of such rulings. *See Shaw v. Boney*, 695 F.2d 528, 530 (11th Cir.1983), *but see Panzavecchia v. Wainwright*, 658 F.2d 337, 341 (5th Cir.1981). Nevertheless, we have consistently stated that where a trial court's evidence ruling renders a state criminal proceeding fundamentally unfair the petitioner is entitled to relief. *Osborne v. Wainwright*, 720 F.2d 1237, 1238 (11th Cir.1983); *Shaw v. Boney*, 695 F.2d at 530; *Dickson v. Wainwright*, 683 F.2d 348, 350 (11th Cir.1982); *DeBenedictis v. Wainwright*, 674 F.2d 841, 843 (11th Cir.1982); *Hills v. Henderson*, 529 F.2d at 401. Fundamental fairness is violated when the evidence excluded is "material in the sense of a crucial, critical, highly significant factor." *Osborne v. Wainwright*, 720 F.2d at 1238; *Shaw v. Boney*, 695 F.2d at 530; *Hills v. Henderson*, 529 F.2d at 401; *see also Barnard v. Henderson*, 514 F.2d 744, 745–46 (5th Cir.1975) (suggesting that exclusion of testimony to the effect that the accused had not been in a certain bar the night of a murder where prosecution case depended heavily on testimony that the accused had been arguing with the victim in the bar just before the murder, violated fundamental fairness).

■ We hold that Dr. Rodriguez's excluded testimony was material in that it was a crucial, critical, highly significant factor in Boykins's defense. Boykins's sole defense at trial was insanity. The record indicates that Dr. Rodriguez would have testified that he had treated Boykins for three years while Boykins was a patient at Chattahoochee. He would have identified Boykins's condition as paranoid schizophrenia, an incurable disorder subject to remission and unpredictable relapse. He would have been able to relate to the jury the past effects of the disease on Boykins's behavior so that the jurors might have

compared Boykins's prior symptoms to his actions on the day of the robbery. Moreover, where Dr. Rodriguez had extensive experience with Boykins, the other experts all based their opinions on single one-hour interviews. This Court has frequently stressed the importance of permitting introduction of all evidence relating to the issue of insanity. *See United States v. McRary,* 616 F.2d 181, 184 (5th Cir.1980); *United States v. Davis,* 523 F.2d 1265, 1267 (5th Cir.1975). In *Gordon v. United States,* 438 F.2d 858 (5th Cir.), *cert. denied,* 404 U.S. 828, 92 S.Ct. 139, 30 L.Ed.2d 56 (1971), the Court stated that "[i]n resolving the complex issue of criminal responsibility it is of *critical importance* that the defendant's entire relevant symptomatology be brought before the jury *and explained." Id.* at 883 (emphasis added). Such evidence as was contained in Dr. Rodriguez's testimony clearly meets the constitutional standard of materiality in the sense of a "crucial, critical, highly significant factor."

The State has advanced no competing interest in excluding Dr. Rodriguez's testimony. Nor does any spring to mind. As we have already observed, the evidence, more than merely relevant, was crucial to the jury's accurate resolution of the petitioner's sanity at the time of the crime. Furthermore, there is no suggestion that Dr. Rodriguez's testimony lacked trustworthiness. On the contrary, of all the experts who testified, Dr. Rodriguez was the most intimately familiar with Boykins's condition.[2]

■ The State does not contest the merits of this claim. Instead, it contends that because Boykins raised only the state evidence aspect and not the constitutional aspect of the trial court's limitation of Dr. Rodriguez's testimony on direct appeal, the petitioner has both failed to exhaust state remedies with regard to the constitutional claim and has waived that claim through procedural default. *See Anderson v. Harless,* 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982) (per curiam). The state did not raise this issue before the district court,[3] nor did the district court consider the exhaustion/waiver question in disposing of the case. The State's failure to raise either the exhaustion or procedural default arguments in the district court bars it from prevailing on those claims in the Court of Appeals. *Washington v. Watkins,* 655 F.2d 1346, 1368 (5th Cir.1981) (waiver); *Hopkins v. Jarvis,* 648 F.2d 981, 983 n. 2 (5th Cir.1981) (exhaustion); *LaRoche v. Wainwright,* 599 F.2d 722, 724 (5th Cir. 1979) (waiver); *Messelt v. Alabama,* 595 F.2d 247, 250–51 (5th Cir.1979) (exhaustion); *West v. Louisiana,* 478 F.2d 1026, 1034–35 (5th Cir.1973) (exhaustion), *aff'd in pertinent part en banc,* 510 F.2d 363 (5th Cir.1975). *See also Grooms v. Wainwright,* 610 F.2d 344, 347 (5th Cir.) (where district court decided issue on the merits without objection from the state, appellate court will reach merits on appeal although petitioner did not properly exhaust state

---

**2.** The district court held that the restriction of Dr. Rodriguez's testimony was harmless error. Of course, this holding conflicts with our finding that the evidence was critical to Boykins's defense and with the precedent of this Circuit emphasizing the importance of psychiatric history to any determination of insanity. Where the substantive standard of constitutional error contains a requirement that the excluded evidence be "crucial, critical, highly significant" the harmless error doctrine is inapplicable. See *United States v. Hammond,* 598 F.2d 1008, 1013 (5th Cir.1979) (violation of the constitutional guarantee that an accused be able to present witnesses in his own defense is prejudicial per se).

**3.** At oral argument before this Court, the State claimed that it had raised the waiver issue before the district court in its motion to strike. That motion did assert that certain of Boykins's claims had been waived, but did not identify those claims except by reference to Boykins's state habeas petition in which he acknowledged not having pursued certain arguments on direct appeal. His "Rodriguez" claim was not among those he admitted to have neglected. The State's motion to strike did not attempt to explain the distinction between Boykins's state evidence law claim, which he did raise on direct appeal, and his federal constitutional claim. Consequently, we are unwilling to hold that Boykins has forfeited his right to raise the constitutional claim because he made the same error on direct appeal.

remedies), *cert. denied*, 445 U.S. 953, 100 S.Ct. 1605, 63 L.Ed.2d 789 (1980).

## III. REMAINING ISSUES

■ The Petitioner further claims that the trial court erred in refusing to instruct the jury on the consequences of a verdict of not guilty by reason of insanity. Although the trial court's ruling appears to have been an erroneous application of Florida law, *see Roberts v. State*, 335 So.2d 285, 287 (Fla.1976), we are unwilling to hold that this error denied the petitioner a fundamentally fair trial.

■ The petitioner's remaining contentions, that the prosecutor's closing argument was impermissibly prejudicial and that the petitioner was denied an evidentiary hearing to determine his competency to stand trial, were not argued on direct appeal, and Boykins has therefore waived them. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Here the State preserved its waiver claims by raising them before the district court. Our review of the record convinces us that the petitioner's claim that he alleged cause and prejudice before the district court is without merit.

Because the trial court's limitation of the scope of Boykins's witness's testimony amounted to a denial of due process, we REVERSE and REMAND to the district court with instructions to grant the petitioner's application for a writ of habeas corpus.

LYNNE, District Judge, concurring and dissenting:

While I concur in Parts I and III of the opinion, I cannot join in Part II. I, of course, agree with the general rule that federal courts reviewing habeas corpus petitions are not empowered to correct erroneous evidence rulings of state trial courts and that there is a well recognized exception thereto; that fundamental fairness is violated and due process denied when the evidence excluded is material in the sense of a crucial, critical, highly significant factor. In its treatment of the facts revealed by the record, the court allows the exception to swallow the rule.

Since Boykins was caught red-handed in the perpetration of an armed robbery, it is not surprising that his only asserted defense was insanity. A fair reading of the record compels the court's conclusion that the state trial court committed error in excluding testimony of Dr. Rodriguez of mental problems experienced by Boykins while undergoing his treatment at Chattahoochee over a three year period. If that were the end of the matter my dissent would not be provoked.

But there is much more which leads me ineluctably to the conclusion that such error, while perhaps not harmless, was assuredly not of constitutional magnitude. In the presence of the jury, Dr. Rodriguez testified without objection:

1. That he is a psychiatrist from Florida State Hospital (R. 162);

2. That Boykins was his patient for three years (R. 163);

3. That in a report to general staff of Chattahoochee, on September 5, 1972, he recommended that [Boykins] be adjudicated competent and released from Chattahoochee (R. 184);

4. That [Boykins] was adjudicated competent and released from Chattahoochee in January 1973, the last time he talked to him (R. 184);

5. That it is possible that a psychotic patient who is later adjudged competent will again become psychotic, and it is possible he will stay in remission for the rest of his life; that he could not say for sure, and that a schizophrenic is always a schizophrenic (R. 189).

6. That on the basis of the hypothetical question put to him by defense counsel, which graphically described Boykins' behavior during the commission of the offense and immediately thereafter, it was his opinion that at that time he was psychotic and did not know right from wrong (R. 183), and

7. That his opinion was based upon the hypothetical posed to him by defense counsel *and his previous experience with him* (R. 187).

The colloquy between court and counsel out of the presence of the jury is revealing (R. 164–181). Apparently the judge was confused as to the purpose for which the testimony of Dr. Rodriguez was sought to be offered. Seemingly, he jumped to the erroneous conclusion that Mr. Cosgrove was attempting to lay a predicate, based upon his treatment of Boykins over a period of three years at Chattahoochee, to qualify him as an expert with respect to the defendant's mental condition at the time of the offense.

With an eye too single upon this misconception and prodded by the artless objection of the prosecutor, he failed to come to grips with the relevancy of the evidence for the true purpose for which it was being offered, as revealed in the following dialogue:

THE COURT: In January, 1973, the doctor found him to be competent.

MR. COSGROVE: Yes, I understand that, my purpose in bringing Dr. Rodriguez here is not at all to seek testimony as to his opinion regarding incompetency of this offense, I don't think that would be possible. My purpose is, too, which I think is relevant, as to pointing out to the jury that this man has had very severe mental problems in the very recent past. As he will testify, the disorder that Mr. Boykins had is a reoccurring [sic] disorder. Even after he's adjudged competent, which is a very tentative thing, could reoccur [sic] at any time. It's entirely unpredictable and I think that's highly relevant.

Finally, the jury heard the testimony of four psychiatrists; two in behalf of Boykins; two called by the state. They were informed that Dr. Rodriguez, who expressed the opinion that Boykins was insane at the time the offense was committed, had treated him as a mental patient for three years, and that Dr. Miller, who expressed the same opinion after a brief interview, had been appointed by the court to determine his competency to participate in his own defense. For the state, both Dr. Barnard and Dr. Carrera, each of whom testified that he had examined Boykins for approximately one hour, expressed the opinion that he was competent at the time of the offense.

I share the sensitivity of my colleagues to the constitutional imperative that every defendant in a criminal case be accorded a fair trial. I part company with them because my reading of the cold record convinces me beyond peradventure that Boykins' trial was not lacking in fundamental fairness. I would not require another after the lapse of eleven years. I respectfully dissent.