Marvin Edward JOHNSON,
Petitioner-Appellant,

v.

Louie L. WAINWRIGHT, Secretary,
Florida Department of Corrections,
Respondent-Appellee.

No. 85–3962.

United States Court of Appeals,
Eleventh Circuit.

Dec. 8, 1986.

Rehearing and Rehearing En Banc
Denied Jan. 7, 1987.

**1480**

Louis G. Carres, West Palm Beach, Fla., Joseph L. Hammons, Pensacola, Fla., for petitioner-appellant.

Wallace Allbritton, Dept. of Legal Affairs, Tallahassee, FL 32301; Mark C. Menser, Asst. Attys. Gen., Dept. of Legal Affairs, Tallahassee, Fla., for respondent-appellee.

Before GODBOLD, HILL and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

In this capital case petitioner Marvin Edward Johnson appeals from the district court's denial of his petition for a writ of habeas corpus. Finding no constitutional error, we affirm.

## I. BACKGROUND

On June 7, 1978, a murder occurred during an armed robbery of a pharmacy in Pensacola, Florida. The Supreme Court of Florida stated the facts of the murder as follows:

> Gary Summitt, an employee of Warrington Pharmacy and an eyewitness to the robbery and the murder, testified that while working at the pharmacy on the evening of June 7, 1978, he went to the back of the store to ask the pharamacist, Woodrow Moulton, a question. There he saw the defendant Johnson holding a gun on Moulton who was at the pharmacy safe putting articles in a bag and he heard Johnson order Moulton to put certain drugs and money from the safe into the bag. After obtaining the drugs and money, Johnson started towards the front of the store. Moulton then grabbed a gun from behind the prescription counter. There was an exchange of gunfire, and Moulton continued to fire at Johnson until his gun was empty. No longer able to defend himself, Moulton stood up with his hands in the air. Johnson then walked up to within a foot and a half of the defenseless pharmacist, said "You think you're a smart son-of-a-bitch don't you?," and shot him in the chest.

*Johnson v. State,* 393 So.2d 1069, 1071 (Fla.1980), *cert. denied,* 454 U.S. 882, 102 S.Ct. 364, 70 L.Ed.2d 191 (1981). Though others were present in the pharmacy, Summitt was the only eyewitness to the robbery and murder.

At trial, Johnson was convicted by a jury of first-degree murder and armed robbery. During the penalty phase, the jury returned an advisory sentence of life imprisonment on the first-degree murder conviction. On January 12, 1979, the trial judge overrode the jury's recommendation and sentenced Johnson to death.

On direct appeal, the Florida Supreme Court affirmed Johnson's conviction. *Johnson v. State*, 393 So.2d 1069 (Fla. 1980), *cert. denied*, 454 U.S. 882, 102 S.Ct. 364, 70 L.Ed.2d 191 (1981).[1] During its review of the state trial court determination the Supreme Court concluded that two of the five aggravating factors which the trial court had found to be present were not, in fact, present. It reaffirmed, however, the trial court's finding that there were no mitigating circumstances present and, by a four to three vote, affirmed the trial court's imposition of the death sentence.

■ During the pendency of his direct appeal, Johnson joined with 122 other death row inmates in filing an application for extraordinary relief and a petition for a writ of habeas corpus in state court based upon the allegation that the Florida Supreme Court had a practice of reviewing *ex parte*, non-record information concerning capital defendants. The Supreme Court of Florida denied relief. *Brown v. Wainwright*, 392 So.2d 1327 (Fla.), *cert. denied*, 454 U.S. 1000, 102 S.Ct. 542, 70 L.Ed.2d 407 (1981).[2]

Johnson's subsequent petition in the United States District Court for the Northern District of Florida for a writ of habeas corpus was denied.[3] Thereafter, petitioner's motion to alter or amend the judgment of the district court was also denied.[4] This appeal ensued.

■ On appeal, Johnson raises seven issues:[5] (1) whether the trial court's refusal to consider lingering doubt about the certainty of proof violated the Eighth and Fourteenth Amendments; (2) whether the

1. In his direct appeal, Johnson raised the following issues: (1) whether his improper cross-examination constituted prosecutorial misconduct and denied him a fundamentally fair trial; (2) whether the exclusion of the testimony of an expert regarding the reliability of eyewitness identification deprived Johnson of his rights to due process and the compulsory attendence of witnesses; (3) whether the trial court erred by admitting into evidence photographs of the interior of the pharmacy after it had been reconstructed by police; (4) whether the imposition of the death penalty after a jury recommendation of life violated his right against double jeopardy, his right to due process and amounted to cruel and unusual punishment; and (5) whether the trial judge in overriding the jury's life recommendation misapplied the standard required by *Tedder v. State*, 322 So.2d 908 (Fla. 1975).

2. Petitioner sought no other habeas relief pursuant to Fla.R.Crim.P. 3.850. The state, however, has not raised the defense of a failure to exhaust state remedies. It thus waives any right to claim such a defense. *Pennington v. Spears*, 779 F.2d 1505 (11th Cir.1986).

3. In his petition, Johnson raised the following issues: (1) the *Brown* issue; (2) the jury override issue; (3) the trial judge's application of the *Tedder* jury override standard; (4) the prosecutorial misconduct issue; (5) the expert witness issue; (6) the improper admission of interior photography; (7) whether he was denied due process because the Florida Supreme Court failed to remand his case for resentencing after it had found that two of the five aggravating circumstances relied upon by the trial court did not exist; and (8) whether the trial court's failure to consider nonstatutory mitigating factors proffered by the petitioner deprived him of due process.

4. In his motion to alter or amend, Johnson raised only four issues: (1) the trial judge's application of the *Tedder* jury override standard; (2) the expert witness issue; (3) whether the trial court's refusal to consider lingering doubt as a mitigating factor deprived him of due process; and (4) whether the trial court and the Florida Supreme Court relied upon an erroneous factual premise because they accepted as true Gary Summitt's recanted testimony that Johnson said "You think you're a smart son-of-a-bitch don't you?" to the victim before he shot him. The state made no response to this motion.

5. Those issues which were raised before the district court and have not been asserted on appeal are deemed abandoned (i.e., the trial judge's application of the *Tedder* standard; the admission of interior photographs and an alleged due process violation for failure to remand).

trial court improperly refused to consider or weigh nonstatutory mitigating circumstances; (3) whether the trial court's exclusion of expert testimony on factors affecting the reliability of eyewitness identification was unconstitutional; (4) whether prosecutorial misconduct while cross-examining petitioner rendered the trial fundamentally unfair; (5) whether the district court improperly denied discovery regarding petitioner's claim of a due process violation by the Florida Supreme Court; (6) whether the imposition of a death sentence by a trial court following a jury verdict for life is unconstitutional; and (7) whether an error of fact in the Florida Supreme Court decision, relating to Johnson's use of the term son-of-a-bitch, improperly affected the determination of aggravating circumstances in this case.

## II. LINGERING DOUBT

■ Petitioner argues that lingering doubt about the certainty of proof of guilt is a mitigating factor which, constitutionally, must be considered by the sentencing authority in making its determination whether or not to impose a death sentence. Petitioner contends that the trial court, acting as sentencer, refused to consider this valid mitigating factor when it imposed a death sentence upon him. To support this contention, petitioner points to two factors. First, he argues that the trial court refused to permit him to argue to the jury that it should not impose the death sentence unless it was absolutely certain that petitioner had committed the crime.[6] Johnson contends that the preclusion of this argument to the jury might indicate that the trial court refused to consider lingering doubt as a factor when making its own determination. Second, petitioner contends that the Florida Supreme Court has precluded, as a matter of law, any consideration of the uncertainty surrounding the strength of the case for guilt in death sentence determinations. *See Buford v. State,* 403 So.2d

943, 953 (Fla.1981), *cert. denied,* 454 U.S. 1163, 102 S.Ct. 1037, 71 L.Ed.2d 319 (1982).

For the purposes of this opinion, we may assume *arguendo,* although we need not decide, that lingering doubt is properly considered a nonstatutory mitigating factor which, under the doctrine of *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), the sentencing authority cannot be precluded from considering. *See King v. Strickland,* 748 F.2d 1462, 1464 (11th Cir.1984) (doubts may rise "to a sufficient level that, though not enough to defeat conviction, [they] might convince a jury and a court that the ultimate penalty should not be exacted, lest a mistake may have been made"), *cert. denied,* 471 U.S. 1016, 105 S.Ct. 2020, 85 L.Ed.2d 301 (1985); *Smith v. Wainwright,* 741 F.2d 1248, 1255 (11th Cir.1984) (" The fact that jurors have determined guilt beyond a reasonable doubt does not necessarily mean that no juror entertained *any* doubt whatsoever. There may be no *reasonable* doubt—doubt based upon reason—and yet some *genuine* doubt exists. It may reflect a mere possibility; it may be but the whimsy of one juror or several. Yet this whimsical doubt—this absence of absolute certainty—can be real.' ") (quoting *Smith v. Balkcom,* 660 F.2d 573, 580–81 (5th Cir.Unit B 1981)) (emphasis in original), *cert. denied,* 470 U.S. 1087, 105 S.Ct. 1853, 85 L.Ed.2d 150 (1985).

■ No evidence exists, however, that the trial court failed to consider any lingering doubt it might have had when it imposed the sentence of death. Contrary to petitioner's assertion, the trial court did allow his attorneys to argue to the jury that it should not advise the judge to adopt a death sentence unless it was absolutely certain that Johnson had committed the crime. *See* Record on Appeal, vol. 8 at 1556, 1562. Moreover, *Buford,* upon which petitioner relies for the proposition that Florida law absolutely precludes the consideration of lingering doubt in rendering a

---

**6.** If the trial judge had limited argument to the jury in this manner, which the record does not indicate that he did, jury charge error, if any, would be harmless beyond a reasonable doubt in light of the jury's life recommendation.

death sentence, was decided in July 1981, over two years after sentencing in Johnson's trial had occurred, and could not have influenced the sentencing judge. We conclude that there is no evidence that the trial court failed to take into account any lingering doubt it might have had when it sentenced petitioner to death. Thus, the district court did not abuse its discretion in declining to alter or amend its judgment.[7]

## III. FAILURE TO CONSIDER OR WEIGH MITIGATING FACTORS

Petitioner also contends that the sentencing court refused to either consider or weigh nonstatutory mitigating circumstances. The allegedly ignored mitigating factors include evidence that the petitioner did not harm two other people in the pharmacy who witnessed the robbery, that petitioner came from a family which suffered extreme hardship, that the victim initiated the actual use of deadly force, and that an injury Johnson may have suffered when the victim shot at him could have impaired his rationality at the time of the homicide. To support his contention that the judge failed to consider these factors in rendering his sentence, Johnson relies principally upon two separate statements made by the trial judge.

> At one point the judge said:
> JUDGE: (Interposing) To limit the aggravating—to broaden the aggravating or, in this case, the mitigating circumstances would keep—would tend to make arbitrary or unlimited the decision of the Court and too much discretion there, that's one thing that they struck down the earlier statute on it because it was capricious and arbitrary and not limited at all. It is limited now.

Record on Appeal, vol. 9 at 1593. At another time the following colloquy occurred:

> JUDGE: Certainly. I want to announce that I find that after weighing the aggravating and mitigating circumstances in

this case, sufficient aggravating circumstances exist, as enumerated in subsection 5 of the statute and set forth in these findings of fact for the imposition of the death penalty; and that there are no mitigating circumstances, enumerated in subsection 6 and set forth in these findings of fact, to weigh against the aggravating circumstances as set forth above. I cite Alford versus State, and dated today. I haven't signed it yet.
> MR. KERRIGAN: May I respond briefly—if the court is relying upon Alford, just briefly—that that case—
> JUDGE: (Interposing) Sir, that was not meant to be the sole justification; the statute is.
> MR. KERRIGAN: I know that, Your Honor. I'm not trying to create error in this record. I just want to alert you to something about Alford.
> JUDGE: Yes.
> MR. KERRIGAN: The Alford case specifically ignores the language of the December 21st opinion in Songer versus State and, that is, Alford depends upon the mitigating circumstances solely confined to the statute. I just wish to alert you to that.
> JUDGE: Yes, I know that and I understand that. And the Court has not disregarded any of the mitigating circumstances that were offered in evidence, either at the penalty phase or during the trial itself. For example, in your argument, sir, I know that you or Mr. Rankin, one of the two, mentioned that probably one of the mitigating circumstances was that he didn't kill everybody else in the store. Well, I don't think that's a mitigating circumstance at all, sir. It just does not aggravate the circumstances anymore than was done. The fact that he didn't murder everyone in the store certainly cannot be called a mitigating circumstance—no way. My point is, I've

---

**7.** We note that petitioner first raised this issue in his motion to alter or amend the district court's order denying him habeas relief. Though the State has failed to raise a *Sykes* bar,

*see Gaddy v. Linahan,* 780 F.2d 935, 942 n. 7 (11th Cir.1986), petitioner's delay in raising this claim restricts our review to one of abuse of discretion.

considered that really, sir, and I reject that argument.

Now, these are the findings of fact that I found—that and what I've announced in the record today, right now. Mr. Johnson, are you prepared to be sentenced sir?

*Id.* at 1766–68.

■ Under the doctrines of *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), and *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 586 (1978), the sentencer may not be precluded from considering as a mitigating factor any aspect of a defendant's character or record or any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death. However, neither of these cases establishes the weight which must be given such evidence. They "simply condemn any procedure in which such evidence has no weight at all." *Barclay v. Florida*, 463 U.S. 939, 961 n. 2, 103 S.Ct. 3418, 3430 n. 2, 77 L.Ed.2d 1134 (1983) (Stevens, J., concurring in the judgement); *see Johnson v. Wainwright*, 778 F.2d 623, 629 (11th Cir.1985); *cf. Eddings*, 455 U.S. at 113, 102 S.Ct. at 876 ("From this statement it is clear that the trial judge did not evaluate the evidence in mitigation and find it wanting as a matter of fact; rather he found that *as a matter of law* he was unable even to consider the evidence.") (emphasis in original). Thus, we must determine whether or not there is any indication that the sentencing judge felt himself bound as a matter of law not to consider the mitigating circumstances offered by Johnson. "Our review is completed once it is established that a full hearing was conducted in which appellant's counsel was given an opportunity to present all the mitigation evidence." *Palmes v. Wainwright*,

725 F.2d 1511, 1523 (11th Cir.1984), *cert. denied*, 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1985).

■ In the instant case there is no indication that the trial court felt itself legally bound not to consider the mitigating evidence presented by the defendant. It is true that *Alford v. State*, 307 So.2d 433 (Fla.1975), *cert. denied*, 428 U.S. 912, 96 S.Ct. 3227, 50 L.Ed.2d 155 (1976), the case cited by the trial judge, limited the Florida courts in their consideration of nonstatutory circumstances. However, the trial court was also aware of and acted upon the decision in *Songer v. State*, 365 So.2d 696 (Fla.1978), *cert. denied*, 441 U.S. 956, 99 S.Ct. 2185, 60 L.Ed.2d 1060 (1979), which effectively overruled *Alford*. Moreover, the trial judge allowed Johnson to present evidence of all these mitigating circumstances to the jury for its consideration, Record on Appeal, vol. 9 at 1651, and expressly noted that he had not "disregarded any of the mitigating circumstances that were offered in evidence, either at the penalty phase or during the trial itself," *id.* at 1767. For example, the sentencing judge expressly considered the proffered factor that Johnson did not kill everyone in the store. It is of no constitutional moment that the sentencing judge evaluated the factor as having little or no mitigating value.[8]

## IV. EYEWITNESS EXPERT

■ At trial, Gary Summitt's eyewitness identification of Marvin Johnson as the murderer provided important evidence which allowed the state to prove its case. Indeed, it may have been the only credible evidence linking Johnson to the crime.

---

**8.** Petitioner also contends that, because the trial court addressed only the statutory mitigating circumstances in its findings of fact, Record on Appeal, vol. 9 at 1799, we must conclude that it believed itself statutorily bound to ignore nonstatutory mitigating factors. This argument is without merit. It has long been the law in this circuit that simply because the sentencing order does not refer to nonstatutory mitigating evidence this does not mean that such evidence

was not considered. *Funchess v. Wainwright*, 772 F.2d 683, 693 (11th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1242, 89 L.Ed.2d 349 (1986); *Raulerson v. Wainwright*, 732 F.2d 803, 807 n. 3 (11th Cir.), *cert. denied*, 469 U.S. 966, 105 S.Ct. 366, 83 L.Ed.2d 302 (1984); *Dobbert v. Strickland*, 718 F.2d 1518, 1524 (11th Cir.1983), *cert. denied*, 468 U.S. 1220, 104 S.Ct. 3591, 82 L.Ed.2d 887 (1984).

Petitioner sought at trial to introduce the testimony of Dr. James Miller, an expert in the psychological subspeciality of perception. Dr. Miller would have testified that (1) a person's ability to perceive declines as stress rises; (2) perceptions become distorted through the repression of painful experiences; (3) perception may be distorted by a subconscious desire to cooperate with authority figures; (4) public commitment to an identification would tend to prevent one from retracting it; and (5) some individuals are "levelers"—ones who level or ignore the differences between things they perceive. In sum, Dr. Miller's testimony would have tended to discredit the eyewitness identification made by Summitt. The trial court concluded that the testimony was inadmissible because the question of eyewitness identification was within the ordinary experience of the jury. Johnson now contends that the trial court's refusal to admit this testimony deprived him of his right to compulsory process for obtaining witnesses in his favor and his right to a fundamentally fair trial.

Petitioner's compulsory process claim is based upon *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). There the Supreme Court held that a criminal defendant's Sixth Amendment right to compulsory process prevented States from adopting a procedural rule which prevented people charged as principals, accomplices or accessories in the same crime from testifying at each other's trial. Such a rule was infirm because it excluded the testimony of a witness regardless of what the content of that testimony might be. In *Phillips v. Wainwright*, 624 F.2d 585 (5th Cir.1980),[9] we recognized that expert testimony may be excluded without violating the compulsory process right. Such an exclusion is made not because the expert testimony is considered per se incompetent, but rather because the content of the testimony is

found to be inadmissible. Following this analysis, the exclusion of expert testimony to support Johnson's theory of faulty eyewitness identification did not deprive him of his right to compulsory process.

Johnson also claims that exclusion of the expert testimony was a due process violation, alleging that it rendered his trial fundamentally unfair. *See Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). However, this court has long held that expert testimony concerning eyewitness identification is inadmissible under the Federal Rules of Evidence. *United States v. Benitez*, 741 F.2d 1312, 1315 (11th Cir.1984), *cert. denied*, 471 U.S. 1137, 105 S.Ct. 2679, 86 L.Ed.2d 698 (1985); *United States v. Thevis*, 665 F.2d 616, 641 (5th Cir. Unit B), *cert. denied*, 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982);[10] *see also Rodriguez v. Wainwright*, 740 F.2d 884 (11th Cir.1984), *cert. denied*, 469 U.S. 1113, 105 S.Ct. 797, 83 L.Ed.2d 790 (1985) (exclusion of expert testimony concerning eyewitness identification by child not due process violation). If the exclusion of this testimony in federal court is not fundamentally unfair, it follows, *a fortiori*, that exclusion by the state court is also permitted. *Cf. Smith v. Phillips*, 455 U.S. 209, 218, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982) (it follows "as the night the day" that a post-trial hearing such as that conducted in federal court is also adequate when provided by the state).

Johnson would have to demonstrate that exclusion of the expert testimony rendered his trial fundamentally unfair because the testimony was material to a crucial, critical and highly significant matter. *Boykins v. Wainwright*, 737 F.2d 1539, 1544 (11th Cir. 1984), *cert. denied*, 470 U.S. 1059, 105 S.Ct. 1775, 84 L.Ed.2d 834 (1985). In *Boykins* we held that the state trial court's exclusion of part of an expert's testimony re-

9. In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

10. In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir.1982), this court adopted as binding precedent all of the post-September 30, 1981, decisions of Unit B of the former Fifth Circuit. *Id.* at 34.

garding a defendant's sanity was a violation of due process.

One of the factors that motivated the decision by the *Boykins* court, however, was the need to permit the introduction of all evidence relating to the issue of insanity. *Boykins* implicitly acknowledges that insanity is a complex question in which an expert's testimony is helpful to the jury. It is self-evident that the question of the accuracy of eyewitness identification is not as complex a question. Most, if not all, of the points which Dr. Miller would have made were merely matters of common sense, well within the ordinary experience of a jury. Indeed, just such a common sense argument was made by defense counsel to the jury during both opening and closing arguments. *See* Record on Appeal, vol. 6 at 963–65, vol. 8 at 1356–68, 1370–71, 1373–78, 1428–35.

We cannot conclude that the exclusion of expert testimony on the reliability of eyewitness identification rendered Johnson's trial fundamentally unfair.

## V.  PROSECUTORIAL MISCONDUCT

Petitioner alleges that four questions put to him during his cross-examination, *see* Record on Appeal, vol. 7 at 1265–72, were so improper as to constitute prosecutorial misconduct. These questions were: (1) whether or not he had received a hip wound during a shootout with the FBI; (2) whether he knew the names of certain narcotic drugs; (3) how many felonies he had previously been convicted of; and (4) whether he had a gun in his possession at the time he was arrested. In evaluating the propriety of these questions, we must determine whether or not they rendered petitioner's trial fundamentally unfair. *Branch v. Estelle,* 631 F.2d 1229, 1233 (5th Cir.1980); *cf. Brooks v. Kemp,* 762 F.2d 1383 (11th Cir. 1985) (en banc) (applying same standard to prosecutorial closing argument), *vacated and remanded on other grounds,* —— U.S. ——, 106 S.Ct. 3325, 92 L.Ed.2d 732 (1986).

▬▬ The question regarding the source of petitioner's hip wound, even if improper, was ameliorated by a strong cur-

ative instruction from the court. Record on Appeal, vol. 8 at 1352. The question regarding petitioner's knowledge of narcotic names was clearly relevant in light of Gary Summitt's testimony that the robber had asked for specific drugs by names. The question regarding the number of felonies petitioner had been convicted of was objected to before petitioner had an opportunity to answer. *Cf. Dickson v. Wainwright,* 683 F.2d 348, 350–51 (11th Cir. 1982) (question regarding number of previous convictions does not render trial fundamentally unfair). Finally, the question regarding appellant's possession of a gun at the time of his arrest, though not objected to and not cured by any instruction, certainly does not rise to a level rendering petitioner's trial fundamentally unfair.

Either singly or in combination the alleged prosecutorial misconduct falls far short of implicating the fundamental fairness of the trial.

## VI.  OTHER ISSUES

Petitioner requests an order which would enable him to discover evidence which demonstrates that the Florida Supreme Court improperly considered *ex parte* evidence when reviewing his death penalty conviction. Johnson, however, was a member of the class in *Brown v. Wainwright,* 392 So.2d 1327 (Fla.), *cert. denied,* 454 U.S. 1000, 102 S.Ct. 542, 70 L.Ed.2d 407 (1981), and the Florida Supreme Court rejected this claim. In *Ford v. Strickland,* 696 F.2d 804 (11th Cir.) (en banc), *cert. denied,* 464 U.S. 865, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983), and its progeny, this court has consistently rejected alleged constitutional violations based upon the *Brown* issue. *See, e.g., Thomas v. Wainwright,* 767 F.2d 738, 747 (11th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1241, 89 L.Ed.2d 349 (1986); *Dobbert v. Strickland,* 718 F.2d 1518, 1521 (11th Cir.1983), *cert. denied,* 468 U.S. 1220, 104 S.Ct. 3591, 82 L.Ed.2d 887 (1984). Thus, this issue has no merit.

▬▬ Johnson argues that the jury override provisions of the Florida capital sys-

tem are unconstitutional. He contends that *Spaziano v. Florida*, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984), stands only for the proposition that all capital sentences need not be imposed by a jury. He argues that this determination of the constitutional validity of Florida's capital sentencing scheme leaves open the question of whether a judge may constitutionally override a jury verdict for life. Petitioner's efforts to distinguish *Spaziano* are unavailing. Indeed, the Supreme Court recognized that its resolution of the larger issue (that a jury need not be the sentencer in a capital case) authoritatively disposed of the petitioner's challenge to the jury override procedure. *Id.* 104 S.Ct. at 3165 ("If a judge may be vested with sole responsibility for imposing the penalty, then there is nothing constitutionally wrong with the judge's exercising that responsibility after receiving the advice of the jury. The advice does not become a judgment simply because it comes from the jury.").

Petitioner's remaining contention that an error of fact in the Florida Supreme Court's decision, relating to Johnson's use of the term "son-of-a-bitch," improperly affected the determination of aggravating circumstances is without merit and warrants no discussion.

## VII. CONCLUSION

For the foregoing reasons, the district court's denial of Johnson's petition for a writ of habeas corpus is

AFFIRMED.