362 So.2d 1017 (1978)
Grady NELSON, Appellant,
v.
The STATE of Florida, Appellee.
No. 77-541.
District Court of Appeal of Florida, Third District.
October 3, 1978.
*1018 Bennett H. Brummer, Public Defender, and Elliot H. Scherker, Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., and James H. Greason, Asst. Atty. Gen., for appellee.
Before HENDRY and KEHOE, JJ., and PIERCE, WILLIAM C. (Ret.), Associate Judge.
PER CURIAM.
Appellant/defendant Grady Nelson was charged by information filed November 4, 1976, with robbery and aggravated battery. The acts were alleged to have occurred at Miami Beach Senior High School and perpetrated upon the person of Cindy Siegel, a student at the school.
Appellant's first trial commenced on December 13, 1976, and ended in a mistrial when the jury was unable to agree upon a verdict. A second trial was held on January 17, 1977. The jury returned a not guilty verdict on the robbery charge and a guilty verdict on the charge of aggravated battery. After post-trial motions for new trial were denied, appellant was adjudicated guilty and sentenced to four (4) years imprisonment. From appellant's conviction and sentence, this appeal has been taken.
In a lengthy and detailed brief, appellant has raised five points on appeal in which he contends that certain rulings of the trial judge deprived him of due process of law and/or a fair and impartial trial. After carefully reviewing the record in light of the briefs and authorities cited therein, and the oral argument of counsel, we are of the the opinion that reversible error has been demonstrated as to appellant's second point, which we shall discuss forthwith. In light of our decision to reverse appellant's conviction and sentence and remand for new trial, we shall also discuss the remaining four points raised by appellant immediately proceeding our discussion of what we consider to be the crux of this appeal.
POINT II
Whether the trial judge erred in limiting the cross-examination of two State's witnesses and further erred in limiting the defense's presentation of its case by refusing to allow defense counsel to introduce a statement of the victim which would explain or rebut adverse inferences created by the introduction of a taped statement given by appellant to the arresting officer.
At trial, the prosecution introduced a taped statement taken from appellant at the time of his arrest. In the statement, appellant admitted having been at Miami Beach High School on the day of the incident to obtain his diploma, but denied that he had assaulted Miss Siegel. Further the statement included a series of questions by Sergeant Duncan, the arresting officer, concerning *1019 the clothing worn by appellant on the day of the incident. Under questioning, appellant had stated that he had given the police the shirt, trousers, hat and sunglasses which he had worn on October 8, 1976, the day of the incident.
During the first trial, which as previously mentioned, ended in a mistrial when the jury was unable to agree upon a unanimous verdict, the prosecution sought to introduce into evidence the clothing which appellant had given Sergeant Duncan. The prosecutor suggested at that time that the clothes were relevant since appellant had been wearing them on the day of the incident. The clothing was thereupon introduced into evidence. At the first trial, Sergeant Duncan testified on cross-examination that Cindy Siegel did not recognize the clothes when they were shown to her after the incident.
At the second trial, defense counsel sought to cross-examine Siegel regarding the clothing which Sergeant Duncan had obtained from appellant. The prosecution objected to this cross-examination on the grounds that no evidence had been introduced to establish that Miss Siegel had ever identified the clothing. Defense counsel proffered that the relevancy of the testimony would be established by subsequent evidence, (cross-examination of Duncan) and requested that the cross-examination be allowed "subject to tying it up at a later time." The court sustained the objection and refused to allow cross-examination.
Subsequently, as in the first trial, the prosecution again introduced into evidence the taped statement given by appellant to Sergeant Duncan. Upon cross-examination of Duncan by the defense, the trial judge again refused counsel the opportunity to question the arresting officer on the subject of appellant's clothing, i.e., that Miss Siegel could not identify the clothing as that worn by her assailant. Further, when the defense presented its case, the trial judge did not allow counsel for appellant to introduce into evidence the clothing allegedly worn by appellant on the day of the incident and given to Sergeant Duncan.
The jury was apprised at the outset of the trial that the only issue in the case would be identity. At the time of closing argument, the prosecution introduced three pertinent facts: (1) that Miss Siegel had identified appellant as her assailant; (2) that her assailant wore a brown and white striped shirt and light brown trousers; and (3) that appellant gave Sergeant Duncan the clothing which he stated he had worn on the day of the incident.
The defense centered its efforts on demonstrating that Miss Siegel had made numerous inconsistent statements and that her memory of the events was unreliable. Yet, the jury never heard the defense attempt to establish, either through cross-examination of Miss Siegel, through contradictory testimony of Miss Siegel brought out through Sergeant Duncan, or by introduction of the actual clothing, itself, that the clothing which appellant had given Sergeant Duncan was not the clothing described by Miss Siegel as having been worn by her assailant.
The record in this case clearly establishes that the jury drew adverse inferences from the absence of any testimony concerning the clothing. During deliberations, the jury submitted the following question:
"On the tape it is stated clothes (pants, shirt, cap) and sunglasses were taken from the defendant.
"Is there any way these can be produced or we can find the colors of these?"
The record also reflects that the absence of testimony concerning the clothing was of considerable significance in the ultimate decision of the jury. In the supplemental motion for new trial was a sworn statement of one of the jurors taken by the defense pursuant to an order of the trial judge permitting the defense to interview the trial jurors. The statement establishes the jury's concern about the absence of testimony on the subject:
"... We wanted to know. It seemed to us that somebody was trying to hold something back."
The juror further stated that if the jury had been informed (as it was at the first *1020 trial) that Cindy Siegel had examined the clothing and had stated that it was not the clothing worn by her assailant, the jury "would have hung."
It is our opinion that the trial judge erred in limiting the cross-examination of both Miss Siegel and Sergeant Duncan on the subject of appellant's clothing once the State had "opened the door" to this testimony by the introduction of the taped statement of appellant. Further error was committed by refusing to allow the defense to introduce into evidence the clothing given to Sergeant Duncan by appellant. The defense should have been permitted to rebut the adverse inferences established by the taped statement by (1) eliciting from either of the witnesses the inability of Miss Siegel to identify the clothing as that worn by her assailant, or (2) by actually introducing the clothing into evidence. Ellison v. State, 349 So.2d 731 (Fla.3d DCA 1977); see Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1028, 35 L.Ed.2d 297 (1973) and Elmore v. State, 291 So.2d 617 (Fla.4th DCA 1974).
Clearly, the error committed could in no way be deemed harmless in light of the jury's reaction to the fragmentary character of the evidence and the sole issue to be determined by the jury, i.e. identity of the assailant. The question submitted by the jury to the trial judge during deliberation, as well as the sworn statement of the juror taken by defense counsel, conclusively show that in the absence of an explanation of the clothing given by appellant to Sergeant Duncan, the jury drew adverse inferences that significantly influenced their ultimate decision. The law is settled that where jurors consider matters not in evidence to the prejudice of a defendant, a new trial is mandated. Russ v. State, 95 So.2d 594 (Fla. 1957).
Accordingly, appellant is entitled to a new trial.
POINT I
Whether the trial judge erred in refusing to compel the production of the Grand Jury testimony of Miss Siegel.
As has previously been mentioned, the only issue involved in this case was that of identity, and likewise, the only defense was the misidentification of appellant as the assailant. Miss Siegel was the only eyewitness to the offense and her credibility was the crucial factor at trial. Appellant now contends that certain testimony given by Miss Siegel before the Grand Jury was both contrary and inconsistent with various statements she had made concerning the facts surrounding her identification of appellant, a former student at the high school, from a yearbook photograph. Appellant argues that the testimony before the Grand Jury amounted to "favorable evidence" which, upon his request, should have been produced for use at trial in his defense. In support of his contention, appellant cites Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).
We note that pursuant to appellant's request for production, the trial judge held an in camera inspection of the transcript and concluded that there were no "great material differences" between the testimony of Miss Siegel before the Grand Jury and certain statements that she had subsequently made. Appellant's motion to produce the Grand Jury testimony was therefore, denied.
We have carefully reviewed the Grand Jury testimony of Miss Siegel and compared same to her testimony at trial. While it does appear that there are certain differences between the testimony it does not appear that the disparity can be raised to the "favorable evidence" status as per Brady, supra. Rather, the differences can be more aptly categorized as the "inconsequential deviations" spoken of in Minton v. State, 113 So.2d 361 (Fla. 1959).
Therefore, we are of the view that the trial judge did not abuse his discretion in denying the defense access to the grand jury testimony, as such testimony did not amount to favorable and material evidence. Williams v. State, 275 So.2d 284 (Fla.3d DCA 1973).

*1021 POINT III
Whether the trial judge erred in denying motions for mistrial and new trial when a prosecution witness, on cross-examination, volunteered testimony which implied that appellant had been involved in unrelated criminal activities.
On cross-examination, Sergeant Duncan was questioned about his contacts with appellant during the time of the investigation of the assault. The Sergeant was asked if appellant, who had denied committing the assault in a statement given after his arrest, had also denied committing the assault during their previous conversations prior to appellant's arrest. In answering this question, Sergeant Duncan volunteered testimony which implied that appellant had been involved in other criminal activity:
"Q. In your previous conversations with Grady Nelson voluntarily had on Tuesday and Wednesday previous to this Friday (when the recorded statement was taken), he denied any participation in the assault; correct?
"A. He wasn't asked about the assault, to my knowledge. I didn't talk to him Tuesday and Wednesday we did not discuss the assault. We picked him up at eight-thirty, took him to the Miami Beach Station on another matter, and when he refused, then we brought him back in."
At sidebar, defense counsel moved for a curative instruction and for a mistrial. The motion for mistrial was denied, however, the trial judge did instruct the jury to "please disregard entirely the last question and answer given by this witness."
In light of our decision to reverse appellant's conviction and sentence as per POINT II, and remand the cause for new trial, we need not determine whether the aforementioned comment of Sergeant Duncan was so prejudicial (when viewed within the context of the curative instruction) so as to be deemed reversible error.
POINT IV
Whether the trial judge erred in excluding expert testimony of a psychologist on matters of eyewitness identification.
At the first trial of appellant, the defense sought to call Dr. Elizabeth Loftus, as expert witness on the subject of eyewitness identification. The trial judge conceded that Dr. Loftus was "an expert on the subject," but ruled that "this subject is not a proper one for admission of expert testimony." The trial judge refused to allow a proffer of the testimony at that time.
Prior to the second trial, the defense filed a motion to admit the testimony of Dr. Loftus, accompanied by a proffer of her testimony. The trial judge again refused to admit the testimony, denying the motion. Appellant contends that it was error to refuse to allow the defense to present the expert testimony. We disagree.
The expert testimony proffered by defense counsel concerned the memory process in general and the various factors which may affect an individual's perception. The testimony did not relate to an examination of the victim, Miss Siegel, but dealt with hypothesis, theories, generalization and speculation. Its purpose was to prove that Miss Siegel could have misidentified the defendant given the facts sub judice.
When facts are within the ordinary experience of jurors, conclusions to be drawn therefrom are left to the jury. McGough v. State, 302 So.2d 751 (Fla. 1974); Tongay v. State, 79 So.2d 673 (Fla. 1955); Thomas v. State, 317 So.2d 450 (Fla.3d DCA 1975). We believe it is within the common knowledge of the jury that a person being attacked and beaten undergoes stress that might cloud a subsequent identification of the assailant by the victim. As such, the subject matter was not properly within the realm of expert testimony. Tongay v. State, supra; see Seaboard Coast Line Railroad Company v. Kubalski, 323 So.2d 32 (Fla.4th DCA 1975) and Judge Downey's concurring opinion in Public Health Foundation for Cancer and Blood Pressure Research, Inc. v. Cole, 352 So.2d 877 (Fla.4th DCA 1977).
Accordingly, the trial judge did not err in excluding expert testimony on the eyewitness identification process.

*1022 POINT V
Whether the trial judge erred in refusing to instruct the jury as requested by defense counsel.
Appellant contends that the trial judge's refusal to give his requested jury instructions on eye witness identification was reversible error. We find this final point to be without merit. The requested instruction was not taken from the Standard Jury Instructions in Criminal Cases in use in this state, but rather from a model instruction derived from United States v. Telfaire, 152 U.S.App.D.C. 146, 469 F.2d 552 (1972).
Instruction 2.12(b) of the Standard Jury Instructions sets forth a charge on credibility of witnesses in which the jury is instructed to take into account factors such as opportunity of observation and ability to remember. This standard charge, though not as elaborate as the model charge advocated in Telfaire, supra, nevertheless adequately covers the factors to be considered by the jury in evaluating the credibility of an eyewitness. In that the standard instruction was in fact given to the jury, the trial judge did not err in refusing to give appellant's charge on eyewitness identification. Zuberi v. State, 343 So.2d 664 (Fla.3d DCA 1977); Roker v. State, 284 So.2d 454 (Fla.3d DCA 1973).
We have carefully reviewed all of the points raised by appellant on appeal and, for the reasons expressed under POINT II, are of the opinion that appellant is entitled to a new trial.
Reversed and remanded for new trial.