393 So.2d 1069 (1980)
Marvin Edwin JOHNSON, Appellant,
v.
STATE of Florida, Appellee.
Nos. 56167, 56703.
Supreme Court of Florida.
December 11, 1980.
Rehearing Denied March 6, 1981.
*1071 Louis G. Carres, Asst. Public Defender, Tallahassee, Fla., for appellant.
Jim Smith, Atty. Gen., and A.S. Johnston, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Marvin Edwin Johnson appeals his convictions for murder in the first degree and armed robbery and his sentence of death. Finding no reversible error in either the convictions or the sentence, we affirm. Johnson does not challenge the life sentence that he received for the armed robbery.
Gary Summitt, an employee of Warrington Pharmacy and an eyewitness to the robbery and the murder, testified that while working at the pharmacy on the evening of June 7, 1978, he went to the back of the store to ask the pharmacist, Woodrow Moulton, a question. There he saw the defendant Johnson holding a gun on Moulton who was at the pharmacy safe putting articles in a bag, and he heard Johnson order Moulton to put certain drugs and money from the safe into the bag. After obtaining the drugs and money, Johnson started towards the front of the store. Moulton then grabbed a gun from behind the prescription counter. There was an exchange of gunfire, and Moulton continued to fire at Johnson until his gun was emptied. No longer able to defend himself, Moulton stood up with his hands in the air. Johnson then walked up to within a foot and a half of the defenseless pharmacist, said "You think you're a smart son-of-a-bitch, don't you?," and shot him in the chest.
Johnson was indicted for and convicted of first-degree murder and robbery. Although the jury recommended a life sentence, the trial court found no mitigating factors and five aggravating factors and imposed the death penalty.
Johnson challenges his convictions on several grounds. He first contends that he was deprived of a fair trial because certain questions asked of him on cross-examination were not relevant, attacked his character, contained false innuendo, and were premised on facts which the State was not prepared to prove. Some of the questions were improper, but no reversible error resulted because, with one exception, the trial court either sustained defense counsel's objections before Johnson answered the objectionable questions or gave an adequate curative instruction. After examining the entire record, we conclude that the one improper question allowed by the trial court relating to defendant's possession of a gun, other than the murder weapon, almost two months after the crime and for which there was no curative instruction, was harmless error. Section 924.33, Florida Statutes (1977); Section 59.041, Florida Statutes (1977).
Johnson also contends that the trial court deprived him of his rights to due process of law and to compulsory attendance of witnesses by granting the State's motion in limine to prevent the testimony of an expert witness who would have testified about the fallibility of eyewitness perception and identification. The State asserts that the facts affecting the reliability of an eyewitness identification are within the ordinary experience of jurors, that the conclusions *1072 to be drawn from the facts affecting the reliability of an eyewitness should be left to the jury, and that expert opinion should be excluded where the facts testified to are of a nature as not to require any special knowledge or experience to form a conclusion.
The trial court has broad discretion in determining the range of subjects on which an expert witness may be allowed to testify, and, unless there is a clear showing of error, its decision will not be disturbed on appeal. Fortianos v. State, 329 So.2d 397 (Fla. 1st DCA 1976). We reiterated this proposition most recently in Buchman v. Seaboard Coast Line Railroad Co., 381 So.2d 229 (Fla. 1980). In Buchman, we affirmed the trial court's admission of expert testimony in a railroad crossing accident case because there was no clear showing that the court abused its discretion in admitting the expert testimony. See also Welfare v. Seaboard Coast Line Railroad Co., 373 So.2d 886 (Fla. 1979); Public Health Foundation for Cancer and Blood Pressure Research, Inc. v. Cole, 352 So.2d 877 (Fla. 4th DCA 1975), cert. denied, 361 So.2d 834 (Fla. 1978). This discretion, however, is not boundless and expert testimony should be excluded where the facts testified to are of such a nature as not to require any special knowledge or experience in order for the jury to form conclusions from the facts. Nelson v. State, 362 So.2d 1017 (Fla. 3d DCA 1978); Johnson v. State, 314 So.2d 248 (Fla. 1st DCA 1975). The common thread running through all the decisions dealing with the admissibility of expert testimony is the premise that if the disputed issue is beyond the ordinary understanding of the jury, such testimony is admissible. Public Health Foundation for Cancer and Blood Pressure Research, Inc. v. Cole; Seaboard Coast Line Railroad Co. v. Kubalski, 323 So.2d 32 (Fla. 4th DCA 1975); Seaboard Coast Line Railroad v. Hill, 250 So.2d 311 (Fla. 4th DCA 1971), writ discharged, 270 So.2d 359 (Fla. 1972).
In Nelson v. State, the appellate court affirmed the trial court's exclusion of expert testimony of a psychologist on matters of eyewitness identification from a criminal trial and correctly stated:
When facts are within the ordinary experience of jurors, conclusions to be drawn therefrom are left to the jury. McGough v. State, 302 So.2d 751 (Fla. 1974); Tongay v. State, 79 So.2d 673 (Fla. 1955); Thomas v. State, 317 So.2d 450 (Fla. 3d DCA 1975). We believe it is within the common knowledge of the jury that a person being attacked and beaten undergoes stress that might cloud a subsequent identification of the assailant by the victim. As such, the subject matter was not properly within the realm of expert testimony... . .
362 So.2d at 1021.
In the present case, the facts affecting the reliability of Gary Summitt's testimony were within the ordinary experience of the jurors and did not require any expertise beyond the common knowledge of the jurors. The trial court did not abuse its discretion in granting the State's motion to exclude the proffered expert testimony.
We also reject Johnson's argument that the court reversibly erred in admitting into evidence photographs of the pharmacy after the officers had reconstructed the scene of the crime.
In addition to reviewing the record in light of the alleged errors set forth by Johnson, we have reviewed the evidence pursuant to Florida Rule of Appellate Procedure 9.140(f) to determine whether the interests of justice require a new trial, and we conclude that no new trial is required. Accordingly, we affirm the convictions.
Johnson also challenges his sentence of death on several grounds. After the jury recommended a life sentence, the trial court, finding no mitigating circumstances, imposed the death sentence. As aggravating circumstances, the court found:

FINDING: Marvin Edwin Johnson was under sentence of imprisonment in the State of Tennessee, but had escaped therefrom, when he committed the murder of which he has been convicted.
.....

*1073 FINDING: Marvin Edwin Johnson had not previously been convicted of any capital felony, but had been convicted of a felony involving the use or threat of violence to the person, to-wit:
1. On October 14, 1964, the defendant pled guilty to the offense of robbery in Glynn County, Georgia, and sentenced to four years, wherein said robbery was committed by "grabbing and holding (the victim), throwing him down upon a bunk located in the Glynn County Jail, tying his hands and feet ..., placing a cloth gag in his mouth, and threatening and offering to strike and hit him with two pieces of metal, fastened together, making one piece ..., the same being then and there an offensive weapon, and a weapon likely to produce death if used in the way and manner as then and there threatened... ." State Exhibit No. 1, Penalty Phase, December 9, 1978.

2. On November 16, 1976, the defendant was found guilty and sentenced to twenty years for the offense of armed robbery in Bradley County, Tennessee. State Exhibit No. 5, Penalty Phase, December 9, 1978.

3. The defendant testified at the trial that he had been convicted of a crime ten times. The only evidence of what those crimes were are the two convictions enumerated in 1 and 2 above. This Court has recently been furnished copies of several prior convictions of the defendant, but the Court has neither studied these documents nor knows the details of them. Copies have been sent to defense counsel. In view of the evidence of prior convictions, the Court makes no judicial determination of what type of convictions are on the defendant's record except as enumerated above.
.....

FINDING: Marvin Edwin Johnson did create a great risk to many persons. He did, in robbing Woodrow Moulton at gunpoint and in the ensuing gun battle within the confines of the Warrington Pharmacy, and in murdering the said Woodrow Moulton, create a great risk of death to the other three persons present in the drugstore at the time.
.....

Finding: The murder was committed while Marvin Edwin Johnson was engaged in the commission of an armed robbery of the Warrington Pharmacy.
.....

FINDING: The murder was committed during an armed robbery during which the defendant, Marvin Edwin Johnson, engaged in a pistol shoot-out with the victim. Upon discovering that the victim had exhausted his ammunition, and with the victim's arms raised in a sign of surrender, the defendant coolly and with calculation approached the victim and pointing his .357 magnum revolver within a foot or two of the victim's chest, remarked to his victim, "You think you're a smart son-of-a-bitch, don't you?", and proceeded to shoot the victim dead with one shot through the victim's heart.
While the method and manner of the murder was not especially heinous, except to the extent that any murder is heinous, the murder was atrocious and cruel and was committed to reek revenge upon Woodrow Moulton for having defended his life and property in a completely lawful manner.
The trial court made it perfectly clear at the sentencing hearing that it had not restricted itself solely to the statutorily enumerated mitigating circumstances.
The trial court erroneously found that Johnson created a great risk of death to many persons. The "many persons" referred to by the trial court were the other three persons present in the drugstore at the time of the shoot out. Three people are not "many persons" as we have interpreted that term in the context of section 921.141(5)(c). Kampff v. State, 371 So.2d 1007 (Fla. 1979). We therefore hold that this aggravating circumstance is not applicable. However, the trial court's findings that there were four other aggravating circumstances and no statutory or other mitigating *1074 circumstances were proper. See State v. Dixon, 283 So.2d 1 (Fla. 1973).
Johnson's contention that the imposition of death after a jury recommendation of life violates his right against double jeopardy has already been rejected by this Court in Douglas v. State, 373 So.2d 895 (Fla. 1979). In Douglas, we held that a jury's recommendation of life is not tantamount to a judgment of acquittal of a crime for which a death sentence is appropriate since such recommendation is advisory only, and we explained that acceptance of defendant's assertion would place our present death penalty statute in contravention of the United States Supreme Court's directives in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), since to accept his argument would mean that a trial judge and this Court would be bound by the jury's recommendation of life.
He further asserts that for the trial court to impose a death sentence after a jury recommendation of life impinges on his right to trial by jury. The function of the jury in the sentencing phase, however, is not the same as the function of the jury in the guilt phase. The United States Supreme Court, in Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), approved the role of the jury under Florida's death penalty statute as advisory only. See also Douglas v. State; Hoy v. State, 353 So.2d 826 (Fla. 1977), cert. denied, 439 U.S. 920, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978).
Johnson's arguments that the court's override of the jury recommendation amounts to cruel and unusual punishment and violates his right to due process of law are likewise without merit. These arguments are based on the same faulty premise as Johnson's double jeopardy argument that the jury's role is more than advisory-that it binds the trial court and this Court.
Johnson's final argument is that the trial court's overriding of the jury's life recommendation is contrary to the dictates of Tedder v. State, 322 So.2d 908 (Fla. 1975). In Tedder, we held that a jury's recommendation of life should be given great weight and that in order to sustain a sentence of death, "the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ." Later in Hoy v. State, wherein we sustained the trial court's override of a jury recommendation, we said that the jury recommendation, is to be accorded great weight, but the ultimate decision as to whether the death penalty should be imposed rests with the trial judge. In the present case, we find from the totality of the circumstances that the facts suggesting the death sentence are so clear and convincing that virtually no reasonable person could differ. There are no mitigating circumstances, statutory or otherwise, and there are four valid aggravating circumstances. We conclude that death is the appropriate sentence to be imposed for this atrocious and cruel execution murder committed during the commission of an armed robbery by an escaped convict who previously had been convicted of felonies involving the use or threat of violence.
Accordingly, having found no reversible error, we affirm the convictions and sentences.
It is so ordered.
ADKINS, BOYD, ENGLAND and ALDERMAN, JJ., concur.
ENGLAND, J., concurs specially with an opinion.
SUNDBERG, C.J., concurs in part and dissents in part with an opinion, with which OVERTON and McDONALD, JJ., concur.
OVERTON, J., concurs as to the conviction, but dissents as to the sentence.
McDONALD, J., dissents with an opinion, with which OVERTON, J., concurs.
ENGLAND, Justice, concurring specially.
While I concur in the Court's affirmance of Johnson's conviction and sentence, I cannot characterize this killing as either atrocious or cruel, as those terms are used in our death penalty statute. My disagreement on this point, however, is irrelevant to the outcome of the case.
*1075 SUNDBERG, Chief Justice, concurring in part and dissenting in part.
I concur in so much of the majority opinion as affirms the convictions in this case, but I must respectfully dissent from that part which affirms the sentence of death.
Because the jury recommended the imposition of a life sentence, the standard to be applied in determining whether to sustain the trial judge's death sentence is that "the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ." Tedder v. State, 322 So.2d 908, 910 (Fla. 1975). After a complete review of the circumstances surrounding this criminal episode as cataloged in the majority opinion, I believe reasonable persons could clearly differ over whether this homicide is so set apart from the norm as to call for imposition of the death penalty. Conceding, as must any person, that all murders are unwarranted and anathema to any civilized society, nonetheless our capital punishment statute reserves the death penalty for those acts which are so flagrantly vile, cruel and outrageous as to set them apart from other capital felonies.
From the seminal case upholding our capital punishment statute we are taught:
Death is a unique punishment in its finality and in its total rejection of the possibility of rehabilitation. It is proper, therefore, that the Legislature has chosen to reserve its application to only the most aggravated and unmitigated of most serious crimes.
State v. Dixon, 283 So.2d 1, 7 (Fla. 1973) (emphasis added).
.....
Thus, it [§ 921.141, Fla. Stat.] again presents evidence of legislative intent to extract the penalty of death for only the most aggravated, the most indefensible of crimes.
Id. at 8 (emphasis added).
.....
What is intended to be included are those capital crimes where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies-the conscienceless or pitiless crime which is unnecessarily torturous to the victim.
Id. at 9 (emphasis added). and finally:
It must be emphasized that the procedure to be followed by trial judges and juries is not a mere counting process of X number of aggravating circumstances and Y number of mitigating circumstances, but rather a reasoned judgment as to what factual situations require the imposition of death and which can be satisfied by life imprisonment in light of the totality of the circumstances present.
Id. at 10.
I submit that notwithstanding the existence of four aggravating circumstances and the absence of any statutory mitigating circumstances, in light of the totality of the circumstances here present the jury could and did quite reasonably conclude that life imprisonment is the appropriate sentence. See Neary v. State, 384 So.2d 881 (Fla. 1980). There is nothing about the actual homicide itself to set it apart from the norm of murders-a single gunshot to the chest with death ensuing instantly. And the circumstances surrounding the criminal episode-the fusillade of pistol shots initiated by the victim and the apparent conscious act of the appellant to spare the two other occupants of the premises from kidnapping or murder-support a reasoned judgment by the jury in favor of a life sentence. Hence, I would affirm the convictions but vacate the death sentence with directions to impose a sentence of life imprisonment without eligibility for parole until the expiration of twenty-five years.
OVERTON and McDONALD, JJ., concur.
McDONALD, Justice, dissenting.
I would affirm the conviction but dissent from the imposition of the death sentence.
I disagree with the statement that from the totality of the circumstances the facts suggesting the death sentence are so clear and convincing that virtually no reasonable *1076 person could differ. Prior to the shooting the defendant had completed his crime of robbery and was leaving. The victim initiated the shooting. I do not condone the acts of the defendant thereafter in the slightest, and there is ample evidence to support premeditated murder, but I feel that there may be factors which would justify the jury's recommendation of mercy. The testimony of the psychologist could lead one to believe that the defendant's apparent malevolent act against the victim was in fact an unplanned reaction to being fired at. He directed no overt act of hostility or harm at the witness Summitt, whose subsequent testimony at trial was primarily responsible for Johnson's conviction, nor did he attempt to harm any other occupant of the store. Since he apparently showed some mercy the jury could have felt it should also. The proper sentence in this case is life imprisonment.
OVERTON, J., concurs.