536 So.2d 1009 (1988)
Marvin Edwin JOHNSON, Appellant,
v.
STATE of Florida, Appellee.
No. 72238.
Supreme Court of Florida.
December 1, 1988.
Rehearing Denied February 9, 1989.
Larry Helm Spalding, Capital Collateral Representative and Carlo Obligato, Staff Atty., Office of the Capital Collateral Representative, Tallahassee, and Mark Evan Olive, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen. and Mark C. Menser, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
This is an appeal from the denial of a motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
Johnson was charged with the killing of a pharmacist, Woodrow Moulton, on the evening of June 7, 1978. The jury found *1010 him guilty of first-degree murder but recommended life imprisonment. However, on January 12, 1979, the trial court sentenced Johnson to death. The judgment and sentence were affirmed in Johnson v. State, 393 So.2d 1069 (Fla. 1980), cert. denied, 454 U.S. 882, 102 S.Ct. 364, 70 L.Ed.2d 191 (1981). The governor signed a death warrant on Johnson in May of 1982. Rather than pursue relief in the state courts, Johnson filed a petition for writ of habeas corpus in the United States District Court and obtained a stay of execution. Thereafter, that court denied relief on all grounds. The denial of the petition for habeas corpus was affirmed by the United States Court of Appeals. Johnson v. Wainwright, 806 F.2d 1479 (11th Cir.1986), cert. denied, ___ U.S. ___, 108 S.Ct. 205, 98 L.Ed.2d 157 (1987).
Johnson's second death warrant was signed on March 3, 1988, and his execution was set for April 13, 1988. Johnson filed a petition for habeas corpus in this Court on April 10, 1988, and relief was denied on April 11, 1988. Johnson v. Dugger, 523 So.2d 161 (Fla. 1988). In the meantime, on April 10, 1988, Johnson also filed in the trial court a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850.
In his motion Johnson alleged that his trial counsel provided ineffective assistance in several particulars. While admitting that he was identified as the killer by an eyewitness, Johnson attacked his counsel for failing to obtain an examination of the crime scene by an independent expert who might have been able to refute the opinion of the state's expert that an unaccounted for bullet from the victim's gun had remained in Johnson's body. Johnson also contended that his counsel failed to put on favorable character evidence during the penalty phase. Finally, he asserted that counsel failed to provide the examining psychologist with information concerning Johnson's addiction to drugs. Johnson says that this information would have changed the doctor's opinion with respect to Johnson's capacity to appreciate the criminality of his behavior and whether he was under extreme duress during the killing. The argument was made that had the sentencing evidence been presented, this Court would have reversed the trial court's override of the jury's recommendation of life imprisonment.
In response, the state pointed out that Johnson's newly hired forensics expert merely opined that the state's reconstruction analysis was inadequate and that with proper reconstruction the defense might have been able to discredit the state's theory that the missing bullet was lodged in Johnson's body. With respect to the other allegations, the state referred to a statement made by Johnson's counsel at the trial that the defense had tactically concluded not to put on character evidence so as to prevent the state from introducing seriously damaging rebuttal evidence of Johnson's character. Finally, the state pointed to evidence that Johnson's lawyers knew that Johnson was addicted to drugs and contended that it was part of their trial strategy to keep this from the jury.
On April 11, 1988, the trial court denied the motion for postconviction relief because it had not been filed prior to January 1, 1987, as required by rule 3.850. Johnson appealed that order. In order to give adequate consideration to the matter, we stayed Johnson's impending execution.
The two-year time provision of rule 3.850 became effective on January 1, 1985. When the rule was originally promulgated, Johnson and others convicted prior to that date had until January 1, 1986, to file their petitions. The Florida Bar Re: Amendment to Rules of Criminal Procedure, 460 So.2d 907 (Fla. 1984). This deadline was extended to January 1, 1987. In re: Rule 3.850 of Florida Rules of Criminal Procedure, 481 So.2d 480 (Fla. 1985). That portion of the rule containing the time limitation now reads as follows:
A motion to vacate a sentence which exceeds the limits provided by law may be filed at any time. No other motion shall be filed or considered pursuant to this rule if filed more than two years after the judgment and sentence become final unless it alleges (1) the facts upon *1011 which the claim is predicated were unknown to the movant or his attorney and could not have been ascertained by the exercise of due diligence, or, (2) the fundamental constitutional right asserted was not established within the period provided for herein and has been held to apply retroactively.
Any person whose judgment and sentence became final prior to January 1, 1985, shall have until January 1, 1987, to file a motion in accordance with this rule.
This Court has previously applied the two-year limit in rejecting postconviction petitions in several cases. Demps v. State, 515 So.2d 196 (Fla. 1987); Delap v. State, 513 So.2d 1050 (Fla. 1987); White v. State, 511 So.2d 984 (Fla. 1987).
Johnson's suggestion that the rule is somehow ambiguous is utterly without merit. We also reject his contention that his claims fall within one of the two exceptions to the application of the time limit. The evidence upon which Johnson makes his argument was always in existence, and if it was unknown to Johnson or his attorney, it could have been ascertained by the exercise of due diligence. Likewise, there are no new fundamental constitutional rights now being asserted which have been given retroactive application.
Johnson asserts that the application of the two-year bar is unconstitutional because it was not in effect when he filed his federal habeas corpus petition. He contends that the requirement to file by January 1, 1987, cannot be applied retroactively because it would constitute a procedural "trap for the unwary." Johnson ignores the fact that after the rule was promulgated, he was given two years within which to file his motion but failed to do so. For purposes of the "ex post facto" clause, a law is retrospective only if it changes the legal consequences of acts completed before its effective date. See Miller v. Florida, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987).
Johnson also seeks to avoid the application of the rule by arguing that he should not be penalized because his counsel was asserting different claims in federal court during the period of 1982 to 1987. Despite the admonition against piecemeal litigation in collateral proceedings, Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), counsel in the postconviction hearing below candidly stated that when Johnson's lawyers decided to go to federal court, they elected to raise only certain claims and assumed that they could always come back to state court and raise others. However, there was nothing to prevent the filing of a motion for postconviction relief in state court while Johnson's federal claims were pending. In Foster v. State, 518 So.2d 901 (Fla. 1987), cert. denied, ___ U.S. ___, 108 S.Ct. 2914, 101 L.Ed.2d 945 (1988), the prisoner successfully obtained a writ of habeas corpus from this Court while his case was pending in federal court. While Johnson makes no claim that his first postconviction counsel was ineffective, we note that the United States Supreme Court has held that prisoners have no constitutional right to any counsel in mounting collateral attacks against their convictions. Pennsylvania v. Finley, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987).
The credibility of the criminal justice system depends upon both fairness and finality. The time limitation of rule 3.850 accommodates both interests. It serves to reduce piecemeal litigation and the assertion of stale claims while at the same time preserves the right to unlimited access to the courts where there is newly discovered evidence or where there have been fundamental constitutional changes in the law with retroactive application. When Johnson filed his motion for postconviction relief, over nine years had elapsed from the date of his trial. The motion was filed more than fifteen months after January 1, 1987. His claims do not fall within the two exceptions prescribed by the rule. Hence, the trial court properly denied Johnson's motion as untimely filed. We affirm the order of denial and vacate the stay of execution.
It is so ordered.
*1012 EHRLICH, C.J., and OVERTON, McDONALD, SHAW and GRIMES, JJ., concur.
BARKETT, J., dissents with an opinion, in which KOGAN, J., concurs.
BARKETT, Justice, dissenting.
In State v. Bolyea, 520 So.2d 562, 563 (Fla. 1988), this Court held that "Rule 3.850 is a procedural vehicle for the collateral remedy otherwise available by writ of habeas corpus... ." In its opinion, the majority today effectively holds that this procedural vehicle can be used to limit substantive habeas relief to a two-year period, and under the circumstances of this case to deny it altogether thereafter no matter how unlawful the sentence imposed upon a petitioner. This holding contravenes the express requirements of the Florida Constitution's Declaration of Rights, that "habeas corpus shall be grantable of right, freely and without cost." Art. I, § 13, Fla. Const. It also violates petitioner's sixth amendment right to effective assistance of counsel.
Moreover, I cannot agree that, no matter how unfair the proceeding below, death must be imposed because a capital defendant has procedurally defaulted an otherwise valid collateral claim. Our entire system of capital jurisprudence rests on the concept that death is different and must be imposed reliably, consistently, and proportionately. Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 1824, 95 L.Ed.2d 347 (1987); Skipper v. South Carolina, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986); Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980); Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); Coker v. Georgia, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977); Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977); Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976). At the very minimum, sentencing procedures must ensure that the death penalty will never be "inflicted in an arbitrary and capricious manner." Gregg v. Georgia, 428 U.S. 153, 188, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976). The need for reliability and proportionality underlies the line of cases dealing with ineffectiveness of trial counsel in death cases. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). I do not believe these goals can be served if, because of a statemandated procedural default, a capital defendant's collateral claims will not be reviewed on the merits by this or any court.
I agree with the observations of the Pennsylvania Supreme Court in Commonwealth v. McKenna, 476 Pa. 428, 439-41, 383 A.2d 174, 180-81 (1978), that
the doctrine of waiver is, in our adversary system of litigation, indispensable to the orderly functioning of the judicial process. There are, however, occasional rare situations where an appellate court must consider the interests of society as a whole in seeing to it that justice is done, regardless of what might otherwise be the normal procedure. One such situation is surely the imposition of capital punishment... .
... . The doctrine of waiver developed not only out of a sense of fairness to an opposing party but also as a means of promoting jurisprudential efficiency by avoiding appellate court determinations of issues which the appealing party had failed to preserve. It was not, however, designed to block giving effect to a strong public interest, which itself is a jurisprudential concern... . The waiver rule cannot be exalted to a position so lofty as to require this Court to blind itself to the real issue  the propriety of allowing the state to conduct an illegal execution of a citizen.
(Footnotes omitted.)
This record contains evidence of potentially serious errors and omissions by trial counsel. Petitioner's counsel may have failed to prepare adequately for the sentencing hearing, may have failed to obtain a psychological evaluation of his client until immediately before trial, may have failed to develop available mitigating evidence, *1013 and may have failed to challenge some of the physical evidence of the crime.
Most troubling of all is counsel's failure to apprise an examining psychologist of petitioner's addiction to drugs, which was the sole motivation for the drugstore robbery that resulted in an unplanned gun battle and the victim's death. Indeed, there is no evidence that petitioner ever intended anything other than robbing the store of drugs. At trial, the testimony indicated only that petitioner was making his getaway without having physically harmed anyone when the drugstore owner suddenly pulled out a concealed gun and emptied it in petitioner's direction, but without striking him. Petitioner then shot the victim once in the chest. Leaving the store, petitioner made no attempt to injure two other persons who were nearby. See Johnson v. State, 393 So.2d 1069, 1071 (Fla. 1980) (majority opinion); id. at 1075 (Sundberg, C.J., concurring in part, dissenting in part); id. at 1075-76 (Overton & McDonald, JJ., concurring in part, dissenting in part).
In light of the jury's recommendation of life in prison, I cannot conclude that there is no probability the outcome of earlier proceedings would have been different. The strict Tedder standard governing "jury overrides" means that a trial judge may not disregard the jury's life recommendation unless virtually no reasonable person could have agreed with it. Tedder v. State, 322 So.2d 908, 910 (Fla. 1975). Based at least partly on counsel's failure to present available mitigating evidence, the trial court concluded that no mitigating factors were available upon which the jury reasonably could have based its life recommendation. Johnson, 393 So.2d at 1071.
The presumption in favor of the jury's life recommendation, however, renders counsel's failure to develop available mitigating evidence indicative of prejudicial ineffectiveness. Had this evidence been available to the judge or to this Court on appeal, Tedder probably would have required that the jury's recommendation be followed. As the Eleventh Circuit Court of Appeals has noted in a similar case involving a jury override:
In light of the very strict standard that applies in [Florida] jury override cases, and in light of the fact that the sentencing judge viewed this case as one without any mitigating circumstances when in fact, assuming Porter's allegations to be true as we must in this posture, there were mitigating circumstances which cannot be characterized as insubstantial, our confidence in the outcome  the outcome being the trial judge's decision to reject the jury's recommendation  is undermined... . We cannot say that, with Porter's proffered evidence in hand, no reasonable person could differ as to the appropriate penalty.
Porter v. Wainwright, 805 F.2d 930, 936 (11th Cir.1986), cert. denied sub nom. Porter v. Dugger, ___ U.S. ___, 107 S.Ct. 3195, 96 L.Ed.2d 682, and cert. denied, ___ U.S. ___, 107 S.Ct. 3196, 96 L.Ed.2d 683 (1987).
As in Porter, this unpresented mitigating evidence could have rendered petitioner's death sentence unlawful under Tedder or disproportionate to other cases involving similar mitigating evidence. He thus has a right to seek habeas relief under the Florida Constitution. I believe this Court is obligated to treat the instant petition as a request for habeas relief notwithstanding the procedural bar of rule 3.850. See art. V, § 2(a), Fla. Const. ("no cause shall be dismissed because an improper remedy has been sought"). Reaching the merits of petitioner's ineffectiveness claim, I would grant the writ and remand to the circuit court below to determine through a proper evidentiary hearing whether the sentence of death in this instance is lawful.
KOGAN, J., concurs.