647 So.2d 106 (1994)
Marvin Edwin JOHNSON, Petitioner,
v.
Harry K. SINGLETARY, etc., Respondent.
Marvin Edwin Johnson, Appellant,
v.
State of Florida, Appellee.
Nos. 83690, 83701.
Supreme Court of Florida.
May 19, 1994.
Rehearing Denied August 25, 1994.
*107 Billy H. Nolas and Julie D. Naylor, Ocala, and Steven J. Uhlfelder of Holland & Knight, Tallahassee, for petitioner/appellant.
Robert A. Butterworth, Atty. Gen. and Mark C. Menser, Asst. Atty. Gen., Tallahassee, for respondent/appellee.
PER CURIAM.
Marvin Johnson, a State prisoner for whom a fourth death warrant has been signed, petitions this Court for a writ of habeas corpus and requests a stay of his execution. He also appeals from the denial of his second motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850. We have jurisdiction under article V, sections 3(b)(1) and (9) of the Florida Constitution.
Johnson was convicted of the 1978 murder of Woodrow Moulton, a pharmacist. According to the testimony of eyewitness Gary Summitt, Johnson entered the pharmacy with a gun and forced Moulton to give him drugs and money out of the safe. When Johnson started toward the front of the store, Moulton grabbed a gun from behind the counter. There was an exchange of gunfire, and Moulton continued to fire at Johnson until his gun was empty. Moulton then stood up with his hands in the air. Johnson walked to within a foot and a half of Moulton and said, "You think you're a smart son of a bitch, don't you?" He then shot Moulton once in the chest.
Johnson was convicted of first-degree murder and robbery. Although the jury recommended a life sentence, the trial judge overrode the recommendation and imposed the death penalty. The judge found five aggravating factors: (1) Johnson was under sentence of imprisonment at the time of the murder; (2) Johnson had previously been convicted of a violent felony; (3) Johnson knowingly created a great risk to many persons; (4) the murder was committed during the course of an armed robbery; and (5) though not especially heinous, the murder was atrocious and cruel. §§ 921.141(5)(a), (b), (c), (d), (h), Fla. Stat. (1977). The judge found no mitigating factors. On direct appeal this Court affirmed the conviction and sentence. Johnson v. State, 393 So.2d 1069 (Fla. 1980), cert. denied, 454 U.S. 882, 102 S.Ct. 364, 70 L.Ed.2d 191 (1981) (Johnson 1). Johnson then filed a petition for habeas corpus in federal district court which was denied. This ruling was affirmed by the United States Court of Appeals in Johnson v. Wainwright, 806 F.2d 1479 (11th Cir.1986), cert. denied, 484 U.S. 872, 108 S.Ct. 205, 98 L.Ed.2d 157 (1987) (Johnson II). Johnson next filed a petition for writ of habeas corpus in this Court which was denied. Johnson v. Dugger, 523 So.2d 161 (Fla. 1988) (Johnson III). Thereafter, Johnson filed a motion for postconviction relief which was denied, and this Court affirmed. Johnson v. State, 536 So.2d 1009 (Fla. 1988) (Johnson IV). Johnson *108 then filed a second petition for habeas corpus in federal district court which was denied. This ruling was affirmed in Johnson v. Singletary, 938 F.2d 1166 (11th Cir.1991), cert. denied, ___ U.S. ___, 113 S.Ct. 361, 121 L.Ed.2d 274 (1992) (Johnson V).

PETITION FOR HABEAS CORPUS
Johnson's primary argument[1] centers on this Court's treatment of the aggravating factors in its opinion on direct appeal. In the majority opinion, Justices Adkins, Boyd, England, and Alderman held that the trial court had erroneously found the aggravating factor that Johnson created a great risk of death to many persons. Johnson I, 393 So.2d at 1073. Because there were four other valid aggravating circumstances and no mitigating circumstances, the Court concluded that death was the appropriate sentence to be imposed. Id. at 1074. However, Justice England concurred specially with an opinion in which he did not characterize the killing as atrocious or cruel but concluded that his disagreement on this point was irrelevant to the outcome of the case. Id. at 1074 (England, J., concurring specially). Justices Sundberg, Overton, and McDonald dissented to the imposition of the death penalty because of their belief that the judge's override violated the standard of Tedder v. State, 322 So.2d 908 (Fla. 1975). Johnson I, 393 So.2d at 1075 (Sundberg, C.J., concurring in part, dissenting in part); id. at 1075-76 (McDonald, J., dissenting).
Johnson argues that the United States Supreme Court's decision in Richmond v. Lewis, ___ U.S. ___, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992), has the effect of invalidating his sentence. Richmond was convicted of first-degree murder and sentenced to death in Arizona. The trial judge found three aggravating circumstances: (1) prior violent felony; (2) especially heinous, cruel, or depraved; (3) prior felony meriting life imprisonment. ___ U.S. at ___, 113 S.Ct. at 528. He found no mitigating circumstances sufficiently substantial to call for leniency. Id. at ___, 113 S.Ct. at 533. The conviction and sentence were affirmed by a divided Arizona Supreme Court. Two of the five justices joined in the principal opinion which held that all three aggravating circumstances were applicable. Two concurring justices stated that the crime was not especially heinous, cruel, or depraved but concluded that death was appropriate in any event. The dissenting justice argued that the murder was not especially heinous, cruel, or depraved and that the mitigating evidence precluded a death sentence. Id.
On petition for certiorari, the United States Supreme Court reversed the court of appeals which had affirmed the denial of Richmond's petition for habeas corpus. Id. at ___, 113 S.Ct. at 534. The Court reasoned that less than a majority of the Arizona Supreme Court had agreed to the applicability of the aggravating factor of especially heinous, cruel, or depraved and that in view of the elimination of that factor the court had not engaged in the necessary harmless error analysis or reweighing at the trial or appellate levels. Id. at ___, 113 S.Ct. at 537.
Johnson argues that because this Court rejected the aggravating factor of creating great risk to many persons and that only three justices specifically approved the aggravating factor of heinous, atrocious, or cruel, he is entitled to the same relief as Richmond. While there are certainly similarities with Richmond v. Lewis, we note some substantial differences. In Richmond, three out of the five justices specifically rejected the aggravating factor of especially heinous, cruel, or depraved. In Johnson's appeal, while only three justices specifically approved of the application of heinous, atrocious, or cruel, only Justice England rejected it. The dissenting opinions were based upon the validity of the override and had nothing to do with the aggravating factor of heinous, atrocious, or cruel. In fact, Justice Sundberg acknowledged the existence of four aggravating circumstances. More important, however, is the fact that in Richmond the aggravating factor of especially heinous, cruel, or depraved *109 was unconstitutionally vague at the time the trial judge rendered his sentence. The Arizona Supreme Court had not provided an adequate narrowing construction of that aggravating factor until Richmond's sentence was on appeal. In Florida, this Court had accomplished the requisite narrowing of the comparable aggravating factor well before Johnson's sentence was imposed. State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974); Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). The importance of this distinction is highlighted when Justice O'Connor summarized the Court's ruling in Richmond by saying:
Petitioner's death sentence was tainted by Eighth Amendment error when the sentencing judge gave weight to an unconstitutionally vague aggravating factor. The Supreme Court of Arizona did not cure this error, because the two justices who concurred in affirming the sentence did not actually perform a new sentencing calculus. Thus the sentence, as it stands, violates the Eighth Amendment.
Richmond, ___ U.S. at ___, 113 S.Ct. at 537.
Independent of any comparison of Richmond to the instant case, Johnson cannot prevail because his petition is procedurally barred. In his first petition for habeas corpus in federal court, Johnson specifically argued that this Court erred in refusing to remand the issue of sentencing to the trial court where we disapproved of one of the aggravating circumstances and where the majority decision could not agree on the applicability of the aggravating circumstance of heinous, atrocious, or cruel. In specifically rejecting this contention, the federal district judge held that this Court had not acted arbitrarily in concluding that the trial judge's error in determining the aggravating circumstances was harmless. While noting the split among the justices with respect to how many aggravating circumstances were supported by the evidence, the judge held that he could not conclude that the imposition of a death sentence under these circumstances was irrational or arbitrary. Johnson did not pursue this point on appeal as noted by the federal appellate court in footnote 5:
Those issues which were raised before the district court and have not been asserted on appeal are deemed abandoned (i.e., the trial judge's application of the Tedder standard; the admission of interior photographs and an alleged due process violation for failure to remand).
Johnson II, 806 F.2d at 1481 n. 5. In his previous petition for habeas corpus in this Court, Johnson also unsuccessfully argued that resentencing was required because we had rejected one of the aggravating circumstances found by the trial judge.
Successive habeas corpus petitions seeking the same relief are not permitted nor can new claims be raised in a second petition when the circumstances upon which they are based were known or should have been known at the time the prior petition was filed. Card v. Dugger, 512 So.2d 829 (Fla. 1987). Clearly, the contention Johnson makes today was specifically raised and rejected in federal district court and abandoned on appeal. The failure to remand on the striking of an aggravating circumstance was also raised and rejected in his prior petition for habeas corpus to this Court. Johnson's failure to address the judicial disagreement concerning the applicability of heinous, atrocious, or cruel cannot be raised in a successive petition for habeas corpus.
To the extent that Richmond v. Lewis can be read as now requiring a harmless error analysis or a remand to the trial court for resentencing, we do not believe that decision rendered twelve years after our opinion affirming Johnson's death sentence constitutes a change of law having retroactive application under Witt v. State, 387 So.2d 922 (Fla.), cert. denied, 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980). The fact-specific decision in Richmond stands as another refinement of Eighth Amendment jurisprudence and does not constitute a change of fundamental and constitutional law which casts serious doubt on the veracity or integrity of the proceedings leading to imposition of Johnson's death penalty.

MOTION FOR POSTCONVICTION RELIEF
Johnson's motion for postconviction relief includes a broad range of claims. Most *110 of them are procedurally barred and need not be discussed.[2] He also alleges that the State suppressed evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and makes claims predicated on newly discovered evidence. Johnson's Brady allegations are equally without merit. The fact that Gary Summitt, the eyewitness to the killing, fainted at one point during the incident was known to the defense. There is also no support for the assertion that the State improperly contended that Johnson was hit by Moulton's bullet when the State "knew" that Johnson was not wounded in the exchange of gunfire.
The claims based on newly discovered evidence will be discussed in more detail because if properly alleged, such claims are not subject to the time limitations of Florida Rule of Criminal Procedure 3.850. One of these claims is based upon an affidavit of Clarence Eugene Robinson who is currently incarcerated in federal prison. Robinson says that he and Johnson robbed a jewelry store in Gainesville on the day before Moulton was killed and that at the time of the shootout in the Pensacola pharmacy the two of them were en route to Chattanooga. He said he did not come forward at the time of Johnson's trial because he was running from the law himself. At the trial, while Johnson denied shooting Moulton, he said nothing about being with Robinson. In any event, Robinson's alibi information cannot be considered as newly discovered because Johnson's lawyers learned of it in 1989 and submitted the information as part of a clemency petition. The claim that an investigator has now discovered additional evidence with respect to bullet damage at the crime scene cannot be considered newly discovered because any such evidence has always been available for discovery. Johnson's claim that he just learned of an undisclosed conflict of interest on the part of the trial judge is frivolous. On their face, the allegations would not require disqualification, and the information upon which the allegations are based has always been available.
Finally, Johnson submits the affidavits of four persons obtained less than a week ago which state that William "Buddy" Pruitt told them that he had actually killed Moulton during the course of a robbery and that Johnson was innocent. Pruitt is an alleged drug kingpin who recently died of a heart attack in federal prison. William Bonds and his ex-wife, Jean D. Corley, say that they stopped by to see Pruitt in 1984 and that he told them in considerable detail how he killed a Pensacola druggist during the course of robbing him. Pruitt said that there was another person on death row for the crime, but observed that it was "better him than me." Both Bonds and Corley said they did not tell anyone because they believed that Pruitt would kill them if they did. They have only now come forward because of Pruitt's death.
Kenneth L. Wood and Bill Lawley, inmates in the same prison, say that the two of them talked to Pruitt about the Moulton killing a week before Pruitt died. They were discussing Johnson's impending death warrant, and Pruitt said that Johnson was going to be executed for a murder which Pruitt had committed. When asked what he was going to do about it, Pruitt said he would do nothing or "they will fry me." Both of them claim that they knew they would be killed if they said anything as long as Pruitt was alive.
The State conceded that these affidavits appear to meet the definition of newly discovered evidence. We agree. The crucial question is whether the contents of the affidavits are of such a nature that they would probably produce an acquittal on retrial. Jones v. State, 591 So.2d 911 (Fla. 1991). At the outset, it must be noted that it is not clear whether these affiants could testify of their conversations with Pruitt in the event of a new trial. Section 90.804(2)(c), Florida Statutes (1993), provides that if a declarant is unavailable, a statement intending to expose him to criminal liability and offered to exculpate the accused is inadmissible "unless corroborating circumstances show the trustworthiness of the statement." Further, even if *111 the statements were determined to be admissible, there would remain the question of whether they would probably result in acquittal.
Johnson alleges that Pruitt met the description of the killer described by Summitt.[3] Johnson contends that he is entitled to an evidentiary hearing so that these affiants could testify and at which he could demonstrate the corroborating circumstances sufficient to establish the trustworthiness of Pruitt's statements. In view of the impending death warrant and at least a possibility of factual innocence, we are inclined to agree. Thus, we have concluded to remand the case for an evidentiary hearing limited solely to the claims surrounding Pruitt's alleged confessions.
We caution that our holding should not be construed to mean that convicted felons are automatically entitled to an evidentiary hearing upon obtaining an affidavit that another person has confessed to committing the crime. Such rulings must be made on a case-by-case basis. In making our decision today, we are influenced by the fact that there is not just one but several affidavits which refer to Pruitt's having confessed on more than one occasion. See Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). In addition, we have reexamined the transcript of the original trial and find that the State's case was based almost entirely upon the eyewitness testimony of Gary Summitt. While Summitt positively identified Johnson as the killer, there was no other evidence effectively tying him to the crime.
We reverse the order denying the motion for new trial and remand for a prompt evidentiary hearing on the claims surrounding Pruitt's alleged confessions.[4] In so doing, we do not pass upon the credibility of the affiants nor do we imply that Pruitt's statements are sufficiently trustworthy as to be admitted into evidence. Likewise, we reach no conclusion with respect to whether it would probably result in a new trial even if they are admissible. We deny the motion for postconviction relief in all other respects. We deny the petition for habeas corpus. As a consequence of our ruling, we grant Johnson's motion for stay of execution until further order of this Court.
It is so ordered.
GRIMES, C.J., and McDONALD and SHAW, JJ., concur.
OVERTON, J., concurs with an opinion.
KOGAN, J., concurs with an opinion.
HARDING, J., concurs in part and dissents in part with an opinion.
OVERTON, Justice, concurring.
I am deeply disturbed with the numerous proceedings that have taken place in this case. Contrary to my colleague in dissent, however, I do not believe we can conclude that corroborative evidence of the hearsay statements is lacking until we afford Johnson an opportunity to present evidence on this issue. This is especially true given that the trial court allowed the State to present evidence that the affidavits were unreliable but did not afford Johnson the same evidentiary hearing opportunity. Moreover, both sides agree that these affidavits, if true, constitute newly discovered evidence. As such, I find that we have no choice under the Due Process Clauses of both the Florida and United States Constitutions but to grant a stay and to allow the evidentiary hearing started by the trial judge to be concluded.
*112 KOGAN, Justice, concurring.
On May 6 this year an inmate named William "Buddy" Pruitt died of heart disease while playing handball at a federal penitentiary in Atlanta. Shortly after his death, at least four people came forward and signed sworn affidavits stating that Pruitt had confessed to the 1978 murder of Woodrow Moulton in Pensacola. These persons indicated they had not come forward earlier because Pruitt had a violent disposition and likely would have sought revenge against them, including revenge inflicted by "buddies" outside of prison.
It is true we are dealing with statements allegedly made some sixteen years after the murder of Moulton. What gives me pause here is that the record of the proceedings held earlier this month in Pensacola, in light of evidence still being uncovered, cannot be squared with basic conceptions of due process or the facts before us today. Throughout these proceedings, for example, the prosecutor assured the trial court that Pruitt did not match the description of Moulton's attacker, who was described by the eye witness as about six feet tall and about 200 pounds. The State at one point argued:
Buddy Pruitt is not six feet tall, he's about five foot eight, he's not 200 pounds, he's about 138 pounds.
This statement in turn was based on crime records the State relied upon. During the proceeding below, the trial court allowed the State to proffer the testimony of the State's own investigator, who commented on crime records maintained by Florida and the FBI. This witness stated that the reports showed Pruitt was five feet, eight inches, and weighed 138 pounds.
First, the official autopsy report of Pruitt (only made available today) indicates that he in fact was seventy-two inches (six feet) tall and weighed 209 pounds at the time of his death. Thus, while the State certainly should not be accused of misleading the trial court, the State nonetheless relied on records whose factual accuracy now must be seriously questioned. Second, by permitting the State to place its own investigator on the stand, the trial court in essence commenced an evidentiary hearing  one resting on what now appears to be faulty information. Since the trial court effectively had commenced an evidentiary hearing, it was obligated to grant Johnson's request to present testimony of his own in rebuttal. Art. I, § 9, Fla. Const. Failure to do so requires the evidentiary hearing the Court now is ordering.
I recognize, as I think the majority also does, the need for finality in all criminal cases. Capital punishment, however, poses a special problem because of its uniquely irrevocable character. I certainly understand that emotions run high when any of us are confronted with the senseless murder of one of our fellow human beings. It is entirely understandable that much sentiment exists to return to the Mosaic code of "an eye for an eye." As a society, however, we must resist the temptation to abandon the basic principles of American law, among these being the right to due process and the right to respond when the State presents condemnatory evidence against us. Criminal law must never become to any degree as ruthless as the criminal it prosecutes.
I do not in any sense detract from the honor of the trial court below. This Court today has seen information that the trial court lacked when it made its ruling. This evidence now reveals the factual testimony received by the Court below to be of doubtful validity. As a result, a new and full evidentiary hearing is required to make absolutely sure that the outcome of Johnson's trial would not have differed had the newly discovered information been known, received, and considered.
HARDING, Justice, concurring in part, dissenting in part.
I respectfully dissent as to the majority's stay of execution and granting of an evidentiary hearing. I do not find that the multiple affidavits asserting that Pruitt had "confessed" on more than one occasion to the murder of Moulton are sufficient to stay the execution and order an evidentiary hearing. The fact that someone says something more than one time does not make it true or add to its credibility. There have been no corroborating circumstances shown, suggested, or alleged *113 that would "show the trustworthiness" of Pruitt's statement. In Chambers v. Mississippi the United States Supreme Court found that circumstances assuring hearsay statements' reliability included the fact that the statements were made spontaneously to a close acquaintance shortly after the crime occurred and the person who made the statements was present in the courtroom and under oath. 410 U.S. 284, 300-01, 93 S.Ct. 1038, 1048-49, 35 L.Ed.2d 297 (1973). Although the Court noted in Chambers that the number of independent statements provided corroboration, this rationale was only part of its finding that each statement was corroborated by other evidence. Id. at 300, 93 S.Ct. at 1048. The other evidence included a sworn confession by the man who made the statements, testimony that the man was seen with a gun immediately after the shooting, and proof that the man previously owned a gun and subsequently bought another weapon. Id. Such corroborating evidence is lacking in the instant case.
NOTES
[1] He also argues that his execution would be cruel or unusual punishment under the Florida Constitution because so few jury overrides have been sustained. This contention is procedurally barred.
[2] These include claims of (1) inadequate crime scene reconstruction; (2) unduly suggestive and unreliable identification procedure; and (3) new assertions of ineffective assistance of counsel.
[3] While Johnson's motion was purportedly denied as a matter of law, the trial judge permitted the State to introduce evidence from a rap sheet that Pruitt was much shorter and lighter in weight than the description given by Summitt. Under these circumstances, it is difficult to see why Johnson should have been precluded from also putting on evidence. We note from an autopsy report now filed with this Court that Pruitt's height and weight appear to more closely compare to Summitt's description.
[4] At the hearing, Johnson may only introduce evidence that would tend to prove that Pruitt committed the murder and argue that such of that evidence as would be admissible would probably result in an acquittal. In other words, Johnson must otherwise stand on the original trial record and cannot attempt to show that he could be more effectively defended upon retrial.